Argued June 21, affirmed August 2, reconsideration denied September 8, petition for review allowed October 12, 1976
See later issue of Oregon Reports

K., *Respondent,*
*v.*
HEALTH DIVISION, *Appellant.*
(No. C-2180, CA 5464)
552 P2d 840

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief

were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*John H. Arenz,* Portland, argued the cause for respondent. With him on the brief were Benson, Arenz, Lucas & Davis, Portland.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

**FORT, J.**

The Health Division of the Department of Human Resources appeals from an order of the circuit court directing it to issue a new birth certificate for petitioner designating the sex as male and changing the specified given names from those common to a female to specified names common to a male.

This case arises as a result of the recent recognition by medical science and the even more recent development of medical procedures designed to treat and alleviate that rare[1] affliction[2] known as transsexualism.[3]

Because of the unusual nature of the problems, both procedural and substantive, raised by this record, we set forth the facts and procedures at some length. Petitioner, then aged 30, filed a Petition for Change of Name in circuit court on November 13, 1973. ORS 33.410 to 33.430. On that date an order to show cause setting a time and place for hearing was issued and posted in the Multnomah County Courthouse as required by ORS 33.420. No objections were filed and an order was entered on November 30, 1973, which directed the desired change of name and which further

---

[1]In M. Matto, *The Transsexual in Society,* 10 Criminology 85, 89 (1972), the author states:

"There are an estimated 2,000 transsexuals in this country, and, if the 'borderline' cases described as transvestites are included, the figure runs over 10,000. Probably the most accurate minimal estimate of the prevalence of transsexualism is a ratio reported by Dr. Ira B. Pauly in 1968 of 1 : 100,000 of the general population, the rate for men to women being approximately 4 : 1."

Based on that data, petitioner is one of about 400 persons in the United States who falls within the group changing from women to men.

[2]Matto, *op. cit.: How the Transsexual Perceives Himself,* 99-102.

[3]"Transsexualism can be broadly defined as an obsession to belong to the opposite sex which is not practically reversible by psychological or other medical treatment. * * *" Notes and Comments, *Transsexuals in Limbo: The Search for a Legal Definition of Sex,* 31 Md L Rev 236 (1971). *See also:* Anonymous v. Weiner, 50 Misc 2d 380, 270 NYS2d 319, 320-31 (New York County Ct 1966); Comment, *Transsexualism, Sex Reassignment Surgery, and the Law,* 56 Cornell L Rev 963 (1971); Matto, *op. cit,* 85-86.

ordered the State Board of Health to issue a new birth certificate "designating the sex as male and name as [K]" (the requested male name). On December 13, 1973, the court issued its Order for Certificate in compliance with the change of name order. On January 23, 1974, appellant filed its Motion to Set Aside Order for Certificate (Special Appearance), urging three supporting grounds:

"1. The State Board of Health was not made a party to the original petition for change of name and sex.

"2. The State Board of Health was not duly served with said petition or other pleadings through legal process.

"3. The Court does not have jurisdiction to order the State Board of Health to issue a new birth certificate changing the sex of a person."

On February 6, 1974, following a show cause hearing based on that motion, the court amended its Order Changing Name by interlineation so that it read as follows:

"IT IS FURTHER ORDERED that after appropriate corrective surgery a new birth certificate shall be issued to petitioner by the State Board of Health for the State of Oregon designating the sex as male and name as [K]" (the requested male name).

On October 22, 1975, petitioner's attorney prepared and served on the Division a motion, accompanied by an affidavit,[4] alleging that petitioner's sex reassign-

_____

4 "* * * * *

"In the Matter of the
Change of Name of

[female name]                      No. C 2180

    Petitioner,            AFFIDAVIT

_____/

"STATE OF OREGON
"County of Multnomah

"I, John H. Arenz, being first duly sworn, depose and say as follows:

"I am the attorney for Petitioner, [female name], now known as [male name].

ment surgery had been completed and requesting the implementation of the amended order of change of name and sex designation of February 6, 1974.

. "That the petition on file herein sets forth the following:

" 'Petitioner is a transsexual presently under the care of John H. Waterman, M.D., Box 1146, Roseburg, Oregon, and is presently a candidate for sex reassignment surgery and as such is required to live as a male for a period of two years before finally accepted for such surgery. Petitioner is presently living and working under the name of [male name].'

"That on November 30, 1973, the Honorable Harlow F. Lenon issued an order changing Petitioner's name from [female name] to [male name]. That in addition thereto, said order, as amended February 6, 1974, provided that after appropriate corrective surgery the State Board of Health for the State of Oregon is to issue to Petitioner a new birth certificate designating the sex as male and name as [male name].

"That subsequent to the amended order dated February 6, 1974, Petitioner underwent sex reassignment surgery at the University of Oregon Health Sciences Center. Petitioner advised me that his treating physician, in charge of the sex reassignment surgery, was Dr. Edward S. Tank, Associate Professor of Surgery (Urology) at the University of Oregon Health Sciences Center.

"That in June of 1975, Petitioner advised me that the sex reassignment surgery had been completed by Dr. Edward S. Tank. I contacted Dr. Tank in June, 1975, and requested that he supply me with written verification that Petitioner's sex reassignment surgery had been successfully completed.

"Pursuant to said request, I received a letter from Dr. Edward S. Tank, dated July 9, 1975. Said letter is attached, marked Exhibit A and by this reference incorporated herein.

"Based upon the foregoing statement of facts, I make this affidavit for the purpose of verifying the completion of Petitioner's sex reassignment surgery.

/s/ John H. Arenz

———————————
John H. Arenz

"Subscribed and sworn to before me Oct. 22, 1975.

"* * * * *."

Exhibit A:

"UNIVERSITY OF OREGON
HEALTH SCIENCES CENTER                                    July 9, 1975

Mr. John Arenz
Attorney at Law
1023 Public Service Bldg.
Portland, Oregon 97204

Dear Mr. Arenz:

    "This letter is to certify that [K] has at this point completed sex

No further appearance was made by the Division and on November 3, 1975, the court issued its order

> "* * * that the State Board of Health for the State of Oregon issue to petitioner a new birth certificate designating the sex as male and name as [K]" (the requested male name).

It is from this order that the state appeals.

We have outlined the procedural history of this case because we have concluded that this is an appropriate case to invoke ORS 1.160. That statute provides:

> "When jurisdiction is, by the Constitution or by statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by the procedural statutes, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the procedural statutes."

ORS 33.410 to 33.430 provide for applications for change of name and, together with ORS 3.260, 3.270 and 3.275(1), vest jurisdiction over such applications in the circuit court. At the time of the order of February 6, 1974, ORS 33.410 provided in part:

> "* * * No change of name of a person, except a

---

reassignment so that he should be considered a male rather than a female. Mr. [K] underwent a complete psychiatric evaluation by Dr. Ira Pauly, internationally known expert on transsexualism, and after that evaluation was considered by the transsexual surgical team at the University of Oregon Medical Center. That team unanimously decided to proceed with the surgical aspect of his sex reassignment. He subsequently had removal of all his internal female organs. Then had genitoplastic surgery to complete the surgical reconstruction. There is no question in the minds in any of the members of the transsexual team or Dr. Pauly that this patient is anything but a male.

"If anything further needs to be supplied the team will be glad to supply it.

Respectfully yours,

/s/ Edward Tank
Edward S. Tank, M.D.
Associate Professor of
Surgery (Urology)

"* * * * *."

woman upon her marriage or divorce, shall be made unless for sufficient reasons consistent with the public interest and satisfactory to the court. * * *"

When the order appealed from was entered in November 1975, that sentence had been eliminated and in its place the legislature provided:

"* * * The change of name shall be granted by the court unless the court finds that the change is not consistent with the public interest."

ORS 33.430(1) provides that in the case of a change by court order of the name of parents of a minor child, the appellant shall issue a new birth certificate for the child containing the new name of his parents. The old certificate shall be sealed. At no time, however, did the change of name statute deal with the problem with which the trial court had to contend here, namely, its power to order change of gender on a birth certificate as ancillary to its power to change the name. More important, except in the instance referred to above in ORS 33.430(1), the statute nowhere expressly authorizes the court to direct appellant to issue a new birth certificate pursuant to an order changing an applicant's name.

■ We find such authority in ORS 432.135, which provides:

"The acceptance for filing of any certificate by the State Registrar more than six months after the time prescribed for its filing, and any alterations of such certificate after it is filed with the State Registrar, shall be subject to regulations in which the division shall prescribe in detail the proofs to be submitted by any applicant for delayed filing or an alteration of a certificate, *or to the order of the county court or any other court of competent jurisdiction.*" (Emphasis supplied.)

Neither party calls our attention to any regulations adopted by appellant pursuant to ORS 432.135 relating to proof to be submitted by an applicant seeking an alteration of a birth certificate. We find that the general authority over family-related matters, the power to change names, and the authority granted by ORS

432.135 give the circuit court jurisdiction to order a change of gender on a birth certificate. It is obvious that the purpose of a birth certificate is to accurately set forth the information which by law it is required to contain. The appellant does not contend that the certificate of petitioner currently in its file is in fact accurate either as to name or gender. ORS 174.020 provides in part:

"In the construction of a statute the intention of the legislature is to be pursued if possible * * *."

Recently the Supreme Court in *Johnson v. Star Machinery Co.,* 270 Or 694, 530 P2d 53 (1974), discussed at length rules of statutory construction appropriate to this case, saying:

"* * * However, the rule requiring the court to follow the plain meaning of seemingly unambiguous language is not inflexible and not without exceptions. Hence, if the literal import of the words is so at variance with the apparent policy of the legislation as a whole as to bring about an unreasonable result, the literal interpretation must give way and the court must look beyond the words of the act. In *U. S. v. Amer. Trucking Ass'ns.,* 310 US 534, 542-44, 60 S Ct 1059, 84 L Ed 1345 (1940), the United States Supreme Court said:

" 'In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention * * *.

" 'There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the

literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination" * * *.' (Footnotes omitted.)

This rule is firmly established in Oregon. * * *" 270 Or at 703-04.

The court then cited and quoted at length from *Fox v. Galloway,* 174 Or 339, 148 P2d 922 (1944), including:

" '*When, however, a literal application of the language produces an absurd or unreasonable result, it is the duty of the court to construe the act, if possible, so that it is a reasonable and workable law and not inconsistent with the general policy of the legislature:* [citations omitted.] * * *' " (Emphasis supplied by Supreme Court.) 270 Or at 705.

It then concluded by saying:

"* * * [I]t would not be * * * unreasonable * * * to state * * * that a thing may not be within the letter of the statute and yet be within the intention of its makers. As stated earlier, it is the legislative intent which controls. When such intent is manifest the courts must give it effect, even though to do so does violation to the literal meaning of its words. [Citations omitted.]" 270 Or at 706.

■ Accordingly, since we conclude that the circuit court had jurisdiction in the exercise of authority granted to it under ORS 33.430 and 432.135 to order both the changing of name and gender on a birth certificate, the latter as ancillary to its authority to change the name, we consider next whether this is an appropriate case for it to provide procedures under ORS 1.160. In *Wulff v. Sprouse-Reitz Co., Inc.,* 262 Or 293, 312-13, 498 P2d 766 (1972), the Supreme Court held that the trial court's allowing witness examination in a manner not provided for by any Oregon statute was not an error. However, in *Amer. Timber/Bernard v. First Nat'l,* 263 Or 1, 10, 500 P2d 1204 (1972), it declined to provide a procedure for a class action, although a class suit was allowed by statute:

"* * * Where a procedure at law has been provided

for the vindication of a claim, we do not believe it to be our function under the statute to provide another procedure at law in a situation in which the legislature considered the other procedure and has limited its use to equitable proceedings." (Footnote omitted.) 263 Or at 10.

Here, however, there is no claim of another available procedure. We hold, then, that this is a proper case for use of new procedures as provided in ORS 1.160 to effect the purposes of ORS 432.135 and 33.430.

The final question is whether the procedure used by the trial court is appropriate. The trial judge required the posting of the proposed name change as required by ORS 33.420. Following the appearance of the appellant in the proceeding, it ordered the change of gender on the birth certificate only after the appearance by appellant in a show cause hearing held following the entry of the first order, and thereafter notification by letter from the surgeon at the Oregon Health Sciences Center that sex reassignment surgery had been by him satisfactorily completed. We note that the surgery was performed by a team at the University of Oregon Health Sciences Center after a psychiatric evaluation and after petitioner lived two years successfully as a male. Under the circumstances we find that the procedures used by the trial court were sufficient to warrant the issuance of the corrected birth certificate.

Affirmed.

**SCHWAB, C. J.,** dissenting.

The unusual gender-change aspect of this case may conceal the breadth of the majority's holding — that *every* time a circuit court orders that a person's name be changed, the circuit court also has jurisdiction to order that the person's birth certificate be altered to reflect the new name. My fundamental disagreement with this holding is: The majority considers a birth certificate to be a record of the facts as they *presently exist;* as I read ORS ch 432, a birth certificate is a record of the facts as they *were* at the time of birth. It

follows, in my view, that a subsequent change in the facts is no basis for altering a birth certificate unless the legislature has expressly so provided.

The legislature has authorized alteration of birth certificates in very limited situations: when children are adopted, ORS 109.310, 109.400 and 432.415; when the parents of an illegitimate child marry, ORS 432.425; and when parents' names are changed by court order, ORS 33.430. None of these statutes aid the majority's holding. Their presence more likely compels the opposite conclusion, since the more likely implication arising from statutory authority to alter birth certificates in specific situations is that the authority does not otherwise exist.

In the broad grant of jurisdiction to enable courts to keep all birth certificates currently accurate, the majority relies upon ORS 432.135 which refers to alteration of birth certificates being subject "to the order of the county court or any other court of competent jurisdiction." Consistent with my understanding of the statutory scheme of ORS ch 432 — that a birth certificate is a record of the facts as they were at the time of birth — I would hold that ORS 432.135 only empowers courts to order alteration of birth certificates that do not accurately reflect the facts as they were at the time of birth.

Were the only interests at stake those of the one individual involved in this case, I would be inclined to join the majority. But in extending a helping hand to this one individual, the majority may be converting this state's vital-records program into a census program that must always be kept up to date. That is too sweeping an act of judicial legislation for me to join for the sake of one individual.

For the foregoing reasons I respectfully dissent.