Argued February 9, reversed March 3, 1977

"K", *Respondent,*
*v.*
HEALTH DIVISION, *Petitioner.*
(TC - C-2180, SC - 24723)
560 P2d 1070

Al J. Laue, Assistant Attorney General, Salem, argued the cause for petitioner. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

James L. Carney, Portland, argued the cause for respondent. On the brief were Benson, Arenz, Lucas & Davis, and John H. Arenz, Portland.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Lent, Linde and Bradshaw, Justices.

TONGUE, J.

Denecke, C. J., specially concurring.

**TONGUE, J.**

The original petitioner, a transsexual person, filed in Multnomah County a petition for a certificate for change of sex from female to male and "that birth and school records should be changed in accordance with such certificate."

That court entered an order which not only granted the petition for change of name but entered a further order, over the objection on special appearance by the State Board of Health, that "a new birth certificate shall be issued to petitioner by the State Board of Health * * * designating the sex as male and the name as" K.[1]

The Court of Appeals affirmed that order on appeal by the State Board of Health, which has petitioned this court for review of that decision. 26 Or App 311 (1976). We granted review because of doubts as to its correctness.

Petitions for change of name are controlled by statutes, ORS 33.410—33.430. The only reference in those statutes to issuance of a "new birth certificate" is in the event of a change, by court order, of the name of the parents of any minor child.[2] It is also provided,

---

[1] The facts are set forth in more detail in the opinion by the Court of Appeals, 26 Or App 311, 552 P2d 840 (1976). Chief Judge Schwab dissented from that opinion.

By stipulation of the parties, the anonymity of the petitioner is protected by reference throughout to the original petitioner (the respondent herein) as "K" for the purposes of this appeal.

[2] ORS 33.430 provides:

"(1) In the case of a change, by court order, of the name of the parents of any minor child, if the child's birth certificate is on file in this state, the State Registrar of Vital Statistics, upon receipt of a certified copy of the court order changing the name, together with the information required to locate the original birth certificate of the child, shall prepare a new birth certificate for the child in the new name of his parents. The name of the parents as so changed shall be set forth in the new certificate, in place of their original name.

"(2) The evidence upon which the new certificate was made, and the original certificate, shall be sealed and filed by the State Registrar of Vital Statistics, and may be opened only upon demand of the person whose name was changed, if of legal age, or by an order of a court of competent jurisdiction."

[ 373 ]

however, by ORS 109.310, 109.400 and 432.415, that when a child for whom an original birth certificate was filed has been adopted, a "supplemental [birth] certificate" shall be issued in the new name of the adopted parents and the original birth certificate shall be sealed, but remain on file.[3] The only other statutory provision for preparation and issuance of a new birth certificate is in the event of the marriage of the parents of any child after its birth, as provided by ORS 432.425.[4]

Despite the recognition by the Court of Appeals of specific statutory provisions for the issuance of new birth certificates under the circumstances provided by these statutes, and the admitted lack of any statute providing for the issuance of new birth certificates upon the change of names of transsexuals, the major-

---

[3] ORS 432.415 provides:

"(1) Upon receipt of the adoption report, the State Registrar shall, if the original birth certificate is of record in his office, prepare and file a supplementary certificate in accord with the adoption report in the new name of the adopted person without reference therein to such adoption or to the names of such person's natural parents, and with reference therein to the adoptive parents as the parents of such person.

"(2) If the original birth certificate is of record with any local registrar, the State Registrar shall procure the same and shall prepare and file such supplementary certificate.

"(3) If no certificate of the birth of such person is of record with the State Registrar or any local registrar, the State Registrar may nevertheless prepare and file such supplementary certificate.

"(4) The State Registrar shall then inclose the original birth certificate and the adoption report in a sealed envelope and file the same in his office.

"(5) Upon receipt of a certified copy of a court order of annulment of adoption, the State Registrar shall restore the original certificate of birth to its original place in the files."

[4] ORS 432.425 provides:

"(1) In case of the marriage of the parents of any child after the birth of the child, the State Registrar, upon receipt of a certified copy of the marriage certificate of the parents, together with a statement of the husband acknowledging paternity, shall prepare a new certificate of birth in the new name of the child.

"(2) The evidence upon which the new certificate was made, and the original certificate, shall be sealed and filed and may be opened only upon order of a court of competent jurisdiction."

ity of that court held that "[w]e find such authority in ORS 432.135, which provides:

> " 'The acceptance for filing of any certificate by the State Registrar more than six months after the time prescribed for its filing, and any alterations of such certificate after it is filed with the State Registrar, shall be subject to regulations in which the division shall prescribe in detail the proofs to be submitted by any applicant for delayed filing or an alteration of a certificate, *or to the order of the county court or any other court of competent jurisdiction.'* " (Emphasis in Court of Appeals opinion)

In reaching that result the majority of the Court of Appeals quoted from decisions by this court to the effect that even when "seemingly unambiguous language," if applied literally, would reach a result "so at variance with the apparent policy of the legislation" as to be clearly unreasonable or absurd, the court must "look beyond the words" of the statute so as to "give effect to the intent" of the legislature, at least "[w]hen such an intent is manifest," quoting from *Johnson v. Star Machinery Co.,* 270 Or 694, 703-04, 705-06, 530 P2d 53 (1974).

The difficulty with the application of such a rule in this case is that it has not been demonstrated, by legislative history or otherwise, that it would be "at variance with the apparent policy" of either the legislature or the State Board of Health to deny the issuance of a "new birth certificate" to a transsexual, thereby changing the designation of sex, as well as the original given name, from female to male. Much less has it been demonstrated that in the adoption of ORS 432.135 any such intent was "manifest" by the Oregon legislature.

In our opinion, it is at least equally, if not more reasonable, to assume that in enacting these statutes it was the intent of the legislature of Oregon that a "birth certificate" is an historical record of the facts as they existed at the time of birth, subject to the specific exceptions provided by statute. This was also the view

taken by the dissenting opinion of the Court of Appeals.

The majority of the Court of Appeals, however, appears to view a "birth certificate" as a record of facts as they presently exist, and thus as a record subject to change by order of a court by the issuance of a "new birth certificate" upon proof of any subsequent changes in the facts as recorded in the original birth certificate, including subsequent changes in sex.[5]

In our opinion, it is not for this court to decide which view is preferable. On the contrary, we hold that this is a matter of public policy to be decided by the Oregon legislature. We also believe that it is by no means clear that it was the "apparent" much less "manifest" intent of the Oregon legislature in enacting ORS 432.135 to confer such broad powers upon the courts of this state.[6]

For these reasons the decision by the Court of Appeals is reversed.

**DENECKE, C. J.,** specially concurring.

I concur in the majority's opinion that the Court of Appeals erred. I specially concur to express my opinion that this is not the type of case in which we should

---

[5] According to the Court of Appeals:

" 'Transsexualism can be broadly defined as an obsession to belong to the opposite sex which is not practically reversible by psychological or other medical treatment. * * *' Notes and Comments, *Transsexuals in Limbo: The Search for a Legal Definition of Sex,* 31 Md L Rev 236 (1971). *See also Anonymous v. Weiner,* 51 Misc 2d 380, 270 NYS2d 319, 320-31 (New York County Ct 1966); Comment, *Transsexualism, Sex Reassignment Surgery, and the Law,* 56 Cornell L Rev 963 (1971); Matto, *op.cit,* [The Transsexual in Society, 10 Criminology] 85-86."

It also appears from the record that the change in sex in this case was accomplished by surgery, as the result of which this individual "had removal of all his internal female organs," together with "genitoplastic surgery to complete the surgical reconstruction."

[6] No issue has been raised in this case whether a birth certificate may be "altered" or "corrected" by interlineation under the circumstances of this case, as distinguished from the issuance of a "new" birth certificate.

grant a petition for review. *State v. McLean,* 255 Or 464, 482, 468 P2d 521 (1970).

Shortly after the Oregon Court of Appeals originated, we adopted some very general standards for passing on petitions for review:

"The following, while neither controlling nor measuring the court's discretion, indicate the character of the reasons which will be considered in granting or denying the petition:

"(1) Where the Court of Appeals has decided a question of substance not theretofore determined by the Supreme Court, or has decided it in a way probably not in accord with the applicable decisions of the Supreme Court.

"(2) Where judges of the Court of Appeals concur in a result but are unable to agree upon a common ground of decision.

"(3) Where a question of great public importance is involved which urgently requires prompt adjudication.

"(4) Where the judgment or decree of the Court of Appeals is final as distinguished from interlocutory in character." Note, Rules of Procedure, Supreme Court and Court of Appeals of the State of Oregon (1971).

These standards were abandoned three years after their adoption. We now have no published policy stating what factors we will consider in passing on petitions for review.

In our new Rules of Procedure we have provided that the petition for review shall contain "A statement of concrete reasons apart from those asserted for reversal, explaining why the issues presented have importance beyond the particular case and require decision by the Supreme Court." Rules of Procedure, Rule 10.05 (1977).

Whether any court of final review will grant a petition for review depends largely upon the view that court takes of its function. If the court believes its function is to correct errors it will grant a petition for review any time it is of the opinion that further

consideration will probably result in the conclusion that error was committed. On the other hand, if the court views its function as a law-announcing body it will not regard even clear error as a ground for granting a petition for review. Such a court will grant petitions for review only if the issue is one of public or legal importance.

I view this court, in considering petitions for review, to be primarily a law-announcing body, not an error-correcting court. I take this view not because of any exalted notions of the capabilities of this court, but because of judicial efficiency. We can competently decide only so many cases and we should limit ourselves to those cases which are of the most overall importance. Traynor, *Some Open Questions on the Work of State Appellate Courts,* 24 Chi L Rev 211 (1957); *To Hear or Not to Hear: A Question for the California Supreme Court,* 3 Stan L Rev 243 (1951).

I know, however, from experience that on occasion even a court which primarily considers itself a law-announcing court will grant a petition for review regardless of the lack of public importance of the case because of its opinion that error probably was committed. It will grant the petition because a party has suffered injury if there was error. This is particularly true if the legislature is not likely to change the law probably erroneously decided by the court, and future parties will be unjustly injured. In my opinion such action is completely appropriate. Judicial efficiency must yield to the prevention of injustice.

Based upon this criteria, I would not have granted the petition for review in this case.

Whether a person born in Oregon can have his or her birth certificate changed to reflect a sexual change does not in my opinion present any issue of importance. I am further of the opinion that there is no demand for a decision of this court delineating generally when a birth certificate can be changed. If I am mistaken in either of these opinions, the legislature

[ 378 ]

can take corrective action. No party, neither "K" nor the state, has been injured by the court's decision.

I would dismiss the petition.