IN RE DECLARATORY RELIEF FOR
LADRACH. ▮

(No. 127656 — Decided
February 17, 1987.)

Probate Court of Stark County.

*Michael J. Finley,* for applicant.

CLUNK, J. The singular issue before the court is whether a post-operative male to female transsexual is permitted under Ohio law to marry a male. More simply stated, the issue is whether two individuals, biologically and legally of the same sex at birth, may contract to marry each other?

The sequence of events that resulted in the case at bar started inconspicuously with the filing of a *Petition for Change of Name* by Edward Franklin Ladrach on April 22, 1986, being case No. 125097. On the same day, the matter was heard by the court. (Hereafter, for purposes of clarity and notwithstanding the fact that the applicant contends to be a biological female, the court will refer to the applicant with masculine pronouns.) The petitioner presented himself in female dress and explained that he intended to undergo "transsexual surgery" later in the year and that at that time was undergoing psychotherapy and was taking female hormones. He further stated to the court that it was a prerequisite for the surgery that the transsexual person dress and act as a member of the opposite sex for an extended period of time prior to the surgery. Finally, the applicant asked the court to change his name to Elaine Frances Ladrach as a further outward manifestation of his desire to be recognized as a female person.

R.C. 2717.01 is the sole statutory section that controls the procedure to be followed by a person desiring to change his or her name. This section gives little direction to the judge as to whether or not to grant a petition for change of name, other than stating the name may be changed if there exists "reasonable and proper cause."

The court believes that so long as there is no intent to defraud creditors or deceive others and the applicant has acted in good faith, then the petition should be granted. On this basis the court granted the requested name change.

The second contact with the Stark County Probate Court in this sequence of events occurred on or about September 22, 1986 when Elaine Frances Ladrach and his fiance presented themselves to the marriage license bureau and filled out the information sheet for a marriage license.

The application indicated that Elaine had been married two previous times and that his previous spouses were of the female gender, and that both prior marriages had been terminated by divorce. The clerk at this point called the judge who then reviewed the unsigned application and also a signed letter by a physician that stated, "Elaine Frances Ladrach has undergone a gender transformation from male to female establishing a somatic gender to match that of her soul." The physician's letter further stated that he had performed the sur-

gery on September 8, 1986. The judge then advised the applicants that he would review the matter and advise them of his decision.

A review of the marriage statute, R.C. 3101.01, led the court to conclude that the application must be denied and the applicants were so advised on or about September 26, 1986. The basis for the declination was that the statute specifically permits the marriage of "male persons" and "female persons" of certain ages and degrees of relationship to each other. The court advised Elaine that his birth certificate still showed him to be a male person and that Ohio law did not permit persons of the same gender to marry.

On November 4, 1986 in case No. 127010, Elaine Frances Ladrach filed an application for correction of birth record, stating that Item 4 which reads "Boy" should read "Girl." This application was dismissed without prejudice by the court on January 14, 1987.

The final occurrence in the sequence of events took place on January 9, 1987, with the filing of a document styled "Complaint for Declaratory Judgment," being case No. 127656, which was set for hearing on January 28, 1987.

A careful review of this complaint is necessary in order to ascertain what relief the applicant is actually seeking. The complaint is signed by Michael J. Finley, attorney at law. There is no declaration that he represents the person for whom the relief is sought. There is no plaintiff or defendant in the caption of the case but rather simply:

"In Re: Elaine Francis [*sic*] Ladrach

Declaratory Judgment"

The document then sets forth the following three statements:

"1.) Edward L. [*sic*] Ladrach n.k.a. Elaine Frances Ladrach was born February 11, 1950.

"2.) The birth certificate, a copy of which is attached hereto and marked as Exhibit 'A', shows the above as being 'boy'.

"3.) On September 8, 1986, Edward Francis [*sic*] Ladrach underwent a gender transformation from a male to female. Said surgical procedure was performed in the South Unit of the Youngstown Hospital Association in Youngstown, Ohio by Dr. Richards [*sic*] D. Murray; a copy of Dr. Murray's Affidavit is attached hereto and marked as Exhibit 'B'.

"Wherefore, Elaine Francis [*sic*] Ladrach requests that:

"I. The Court issue an order finding that she be referred to as a female person for legal purposes.

"II. The said Order be attached to her birth certificate.

"III. That a marriage license be issued."

The court announced from the bench on January 28, 1987, prior to the presentation of the case in chief by attorney Finley, that the requisites for a valid declaratory judgment were lacking. There was no plaintiff or defendant nor was any issue raised by the complaint. A declaratory judgment can only be rendered in cases where there is a real controversy between adverse parties in a matter which presents a justiciable issue.

The court then advised counsel and the applicant that if they desired to proceed on the issue as delineated in the first paragraph of this opinion, namely, whether a post-operative male to female transsexual is permitted under Ohio law to marry a male, the court would hear the matter. Counsel and applicant agreed to proceed.

Applicant's presentation was simple and brief. It consisted of the testimony of the applicant and an expert medical witness.

The applicant testified that although he was born a male and was married twice, each time to a female,

that he considered himself a female and had then demonstrated that fact by the change of name, cross-dressing and the submission to the recent medical surgical procedure that resulted in the removal of the penis and testicles and the creation of a vagina.

Robert Hamilton III, M.D., a Canton, Ohio physician specializing in obstetrics and gynecology, testified that he saw Elaine Frances Ladrach on December 15, 1986, for a physicial examination to determine if he was of the female gender. Dr. Hamilton stated that Elaine had "normal female external genitalia" and that in his opinion "he would classify Elaine as a female." He further stated that he did not perform a pap smear or chromosomal test. When questioned by applicant's counsel as to whether a chromosomal test would show Elaine to be a female he replied "highly unlikely."

A transsexual has been defined in many ways, but a definition agreed to by applicant's medical witness is "a person who discovers sometime, usually very early in life, that there is a great discrepancy between the physical genital anatomy and the person's self identity as a male or female."

Transsexualism's short legal history has not resulted in any definitive direction to the court. It would appear that only three states, Arizona, Louisiana and Illinois, have statutes that allow the birth record of a transsexual to be changed following sex reassignment surgery (also referred to as anatomical change of sex by surgery or sex alteration surgery). However, another twelve states have permitted a post-operative change of sex designation on birth records. Ohio is not one of the fifteen states. New York is also not such a state and a leading case in that state, *Anonymous* v. *Weiner* (1966), 50 Misc. 2d 380, 270

N.Y. Supp. 2d 319, sets out some findings that would appear to enunciate the majority view in this area.

The petitioner in the *Weiner* case had been born a male, had undergone "conversive" surgery and had assumed the name and role of a female. The petition for a change of sex designation on the birth certificate was submitted to the appropriate agency of the city of New York. The board of health called upon the New York Academy of Medicine to study the problem and make recommendations to the board. After analyzing the many facets and ramifications of the change of sex on the birth certificate of a transsexual, including the fact that other states permit such a change, the committee concluded that:

" '1. male to female transsexuals are still chromosomally males while ostensibly females;

" '2. it is questionable whether laws and records such as the birth certificate should be changed and thereby used as a means to help psychologically ill persons in their social adaption.

" 'The Committee is therefore opposed to a change of sex on birth certificates in transsexualism.' " *Id.* at 382, 270 N.Y. Supp. 2d at 322.

Based upon these recommendations the application was denied.

It is the position of this court that the Ohio correction of birth record statute, R.C. 3705.20, is strictly a "correction" type statute, which permits the probate court when presented with appropriate documentation to correct errors such as spelling of names, dates, race and sex, if in fact the original entry was in error. There was no error in the designation of Edward Franklin Ladrach as a "Boy" in the category of "sex" on his birth certificate, and for this reason the previously mentioned application for correction of birth record was dismissed by this court.

The Supreme Court of Oregon in

*K.* v. *Health Division* (1977), 277 Ore. 371, 560 P. 2d 1070, considered whether to grant the petition of a transsexual to order the change of sex on birth and school records from female to male. The court said, "it was the intent of the legislature of Oregon that a 'birth certificate' is an historical record of the facts as they existed at the time of birth * * *," *id.* at 375, 560 P. 2d at 1072, and further concluded that it was up to the legislature to authorize any such change which would permit the birth certificate to reflect facts as they presently exist.

It seems obvious to the court that if a state permits such a change of sex on the birth certificate of a postoperative transsexual, either by statute or administrative ruling, then a marriage license, if requested, must issue to such a person provided all other statutory requirements are fulfilled.

In every state marriage is governed by a statute requiring the applicants to obtain a license; and thus the state retains the inherent right to decide which marriages it shall recognize. Ohio's statute is R.C. 3101.01, which states that:

"Male persons of the age of eighteen years, and female persons of the age of sixteen years, not nearer of kin than second cousins, and not having a husband or wife living, may be joined in marriage."

Applicants for a license must provide the probate court with certain information including full name, age, residence, birth place, occupation, name of father, maiden name of mother, number of times previously married, and if applicable, date of decree of divorce, case number of decree, name of former spouse and name of minor children. See R.C. 3101.05.

No applicant for a marriage license shall misrepresent any of the facts required by R.C. 3101.05. If the probate judge has reason to believe that any of the facts have been misrepresented, then the probate judge shall not issue the license.

It is axiomatic that if a license is inadvertently issued where there has been a material misrepresentation of factual information, such as sex, marital status, or age, then such license would be void. In the case at bar the applicants apparently made accurate representation of all material facts and because of those facts a license was appropriately refused.

There are two leading court decisions that should be briefly reviewed in order to bring this court's decision in proper perspective. Although both of these cases are domestic relations in origin, one of the spouses had had sex reassignment surgery.

In *M.T.* v. *J.T.* (1976), 140 N.J. Super. 77, 355 A. 2d 204, the Superior Court of New Jersey, Appellate Division, stated:

"Where transsexual was born with physical characteristics of male, but successful sex reassignment surgery harmonized her gender and genitalia so that she became physically and psychologically unified and fully capable of sexual activity as a woman, such transsexual thereby became a member of female sex for marital purposes, subsequent marriage to male was not void, and absent fraud, husband had legal obligation to support her as his wife,"

In the above case, the parties were married and lived together as husband and wife for over two years until husband left the home and refused to support his wife.

The New Jersey court takes a very liberal posture and concludes that the plaintiff at the time of her marriage was a female and the defendant, a male, became her lawful husband, obligated to support her as his wife. There

is no indication in the opinion as to whether the court would have ordered a marriage license to issue if the issue of transsexualism had been raised at the time of the marriage application.

The opposite result was reached in *Corbett* v. *Corbett* (P.D.A. 1970), 2 W.L.R. 1306, 2 All E.R. 33, an English case. Again a ceremonial marriage had been performed and both parties sought an annulment on the ground of incapacity or willful refusal to consummate the marriage. This decision is particularly important because of the reasoning of Judge Ormrod, who was also a medical doctor. Judge Ormrod said:

"Having regard to the essentially heterosexual character of the relationship which is called marriage, the criteria must, in my judgment, be biological, for even the most extreme degree of transsexualism in a male or the most severe hormonal imbalance which can exist in a person with male chromosomes, male gonads and male genitalia, cannot reproduce a person who is naturally capable of performing the essential role of a woman in marriage. In other words, the law should adopt in the first place, the first three of the doctors' criteria, i.e. the chromosomal, gonadal and genital tests, and if all three are congruent, determine the sex for the purpose of marriage accordingly, and ignore any operative intervention." *Id.* at 1324-1325, 2 All E.R. at 48.

It is generally accepted that a person's sex is determined at birth by an anatomical examination by the birth attendant. This results in a declaration on the birth certificate of either "boy" or "girl" or "male" or "female." This then becomes a person's true sex and as Judge Ormrod stated, "[t]he respondent's operation, therefore, cannot affect her true sex." *Id.* at 1323, 2 All E.R. at 47. He found the marriage to be void.

After reviewing the reported cases, law review articles and the post-hearing brief of the applicant, this court concludes that there is no authority in Ohio for the issuance of a marriage license to consummate a marriage between a post-operative male to female transsexual person and a male person.

The determination of a person's sex in regard to his birth certificate and marital status are legal issues and, therefore, the court must look to the statutes.

This court is charged with the responsibility of interpreting the statutes of this state and judicial interpretations of these statutes. Since the case at bar is apparently one of first impression in Ohio, it is this court's opinion that the legislature should change the statutes, if it is to be the public policy of the state of Ohio to issue marriage licenses to post-operative transsexuals.

There was no evidence that applicant at birth had any physical characteristics other than those of a male and he was thus correctly designated "Boy" on his birth certificate. There also was no laboratory documentation that the applicant had other than male chromosomes. There has been nothing shown to this court to cause it to change the existing Ohio law. Therefore, the application of Elaine Frances Ladrach to obtain a marriage license as a female person is denied.

*Application denied.*