IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

THOMAS T. BEATIE, *Petitioner/Appellant*,

*v.*

NANCY J. BEATIE, *Respondent/Appellee.*

THOMAS T. BEATIE, *Petitioner/Appellee*,

*v.*

NANCY J. BEATIE, *Respondent/Appellant.*

No. 1 CA-CV 13-0209
FILED 08-13-2014

Appeal from the Superior Court in Maricopa County
No. FC2012-051183
The Honorable Douglas Gerlach, Judge

**REVERSED AND REMANDED**

COUNSEL

Cantor Law Group P.L.L.C., Phoenix
By David M. Cantor, Allyson Del Vecchio
*Counsel for Petitioner/Appellant-Appellee*

Law Office of David B. Higgins P.L.L.C., Phoenix
By David B. Higgins
*Counsel for Respondent/Appellee-Appellant*

Campbell Law Group, Chartered, Phoenix
By Claudia D. Work
*Counsel for Amicus Curiae Transgender Law Center*

---

**OPINION**

Judge Kenton D. Jones delivered the opinion of the Court, in which Presiding Judge Patricia A. Orozco and Judge Lawrence F. Winthrop joined.

---

**J O N E S**, Judge:

¶1        Thomas and Nancy Beatie (Thomas and Nancy, respectively) appeal the family court's dismissal of their request for entry of a decree of dissolution of their marriage.[1] Thomas was born a female who underwent medical procedures toward changing his sex, and subsequently obtained an amended birth certificate from the State of Hawaii recognizing him as a male. Thomas and Nancy then obtained a marriage license in Hawaii, and were married in that state. At that time, Hawaii only recognized marriages entered into between one man and one woman.

¶2        After relocating to Arizona, the Beaties petitioned for the dissolution of their marriage. However, the family court determined it lacked subject matter jurisdiction to act upon the Beaties' request for a divorce, concluding the Beaties had entered into a same-sex marriage between two females, despite Thomas having obtained an amended birth certificate from the State of Hawaii indicating his sex to be male, because he had retained the ability to bear children, and in fact gave birth to three children following his marriage to Nancy. Based upon the record and Arizona Revised Statutes (A.R.S.) sections 25-101 and 36-337(A)(3),[2] we reverse the family court's dismissal of the Beaties' petition to enter the

---

[1]        Thomas also appealed the family court's orders concerning child custody, child support, and property division; Nancy appealed the family court's failure to rule on her petition for spousal maintenance.

[2]        Absent material revisions after the relevant dates, we cite the current version of the statutes and rules unless otherwise indicated.

2

decree of dissolution and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

### I.     Thomas's Background and Gender Reassignment

¶3     Thomas was born in 1974, on the island of Oahu, Hawaii, and given the birth name, Tracy Lehuanani Lagondino. Early on, and continuing through his teenage years, Thomas believed his gender identity to be male. After numerous discussions with his doctor, a general practitioner, Thomas began a testosterone hormone therapy regimen and discussed surgically altering his gender. From 1997 to 1999, Thomas underwent testing to determine his true gender, and when those tests indicated his true gender to be male, Thomas engaged in extensive hormonal and psychological treatment to conform to his gender identity.

¶4     Based upon the recommendation of his general practitioner, Thomas met with Dr. Michael Brownstein,[3] a physician licensed in California, who specialized in transgender-related surgeries.[4] In 2002, Thomas underwent surgery, performed by Dr. Brownstein, to create a male-contoured and male-appearing chest, and which irreversibly altered Thomas's anatomy and appearance for the purpose of his gender change from female to male.

### II.    The Post-Reassignment Affidavit

¶5     With that, Dr. Brownstein completed an affidavit for Thomas, averring:

> Psychological and medical testing . . . determine[d] this patient's true gender . . . to be male. [Thomas] has undergone extensive hormonal and psychological treatment

---

[3]     In the only expert testimony considered by the family court pertaining to the issue of subject matter jurisdiction, Dr. Brownstein offered the uncontroverted opinion that the surgery he performed on Thomas was medically necessary and sufficient to support his redesignation as a male.

[4]     Dr. Brownstein, a plastic surgeon with thirty-five years of experience in performing transgender-related surgeries, estimated he performs 150 to 200 transgender-related surgeries a year.

and has . . . undergone surgical procedures performed by me to irreversibly correct his anatomy and appearance. This should qualify [Thomas] to be legally considered male within the guidelines of the particular jurisdiction in which this individual seeks to legally change his gender status.

¶6 Shortly thereafter, using the affidavit, Thomas began the process of changing his legal documents. In June 2002, Thomas changed the legal gender status reflected upon his Hawaii driver's license from female to male and, in January 2003, amended the name on his Hawaii driver's license from Tracy to Thomas. By January 2003, Thomas also lodged a Notice of Change of Name with the Office of the Lieutenant General for the State of Hawaii and amended his birth certificate to reflect his name as Thomas and his gender as male.

### III.   Thomas and Nancy

¶7 Thomas and Nancy were married in Hawaii on February 5, 2003. At that time, the laws of the State of Hawaii allowed marriages "only between a man and a woman." Haw. Rev. Stat. (H.R.S.) § 572-1 (1997), *amended by* Hawaii Marriage Equality Act of 2013, § 3 (2nd Spec. Sess. Act 1). When Thomas and Nancy applied for their marriage license, the State of Hawaii required the applicants to appear in person before a marriage license agent and provide proof of age in the form of a birth certificate, valid I.D. or driver's license.[5] Thomas stated within an affidavit that he presented the required photo identification, and that the identification he provided reflected his gender as male. The Hawaii State Registrar accepted the application and issued the Beaties a marriage certificate on February 6, 2003.

¶8 As Nancy was unable to have children, the couple ultimately agreed Thomas would be the child-bearer as his genital surgery was not yet completed. Thomas eventually gave birth to three children in Oregon between 2008 and 2010. As regards Thomas's continued ability to bear children, Dr. Brownstein testified child-bearing by a transgendered male

---

[5] In his Memorandum in Support of Subject-Matter Jurisdiction, Thomas stated: "In order to obtain the marriage license, [I] was required to furnish photo identification which reflected [my] gender identity." The record does not provide documentation of any other requirements for obtaining a marriage license in the state of Hawaii at the time the Beaties married in 2003.

does not revoke his transgendered status. Nancy legally adopted the children, and the children's birth certificates reflect Nancy as their mother and Thomas as their father. In or around 2010, the Beaties relocated from Oregon to Arizona with their children and resided in Arizona as husband and wife, even filing joint Arizona tax returns.

## IV.  The Beaties' Filing of their Petition for Dissolution of Marriage

¶9         On March 8, 2012, Thomas filed a petition for legal separation of a non-covenant marriage with children. Following an unopposed motion from Nancy, the legal separation action was converted to an action for dissolution of their marriage.

¶10         On June 27, 2012, the family court, prompted by its duty to independently determine whether it had subject matter jurisdiction to enter a decree of dissolution, issued an order requesting the Beaties to identify controlling and applicable legal authority establishing the validity of their marriage. The family court explained its request by noting Thomas was the biological birth mother of the three children, which meant Thomas and Nancy's marriage was between "a female [Nancy] and a person capable of giving birth, who later did so [Thomas]." The family court also stated it had been unable to locate any authority defining a "man (or male) in terms that contemplate that person's ability to give birth to children," and questioned whether the marriage between Thomas and Nancy was a same-sex marriage.

## V.  The Family Court's Ruling on Subject Matter Jurisdiction

¶11         After briefing and oral argument, the family court found it did not have subject matter jurisdiction as the Beaties had failed to show: (1) a double mastectomy, without more, constitutes a "sex change operation" under Arizona law; and (2) the word "man" in the Arizona Constitution carries a meaning any different from its plain, ordinary meaning, which excludes people capable of giving birth. It supported the latter point by noting the Arizona legislature has repeatedly recognized pregnancy as a uniquely female attribute.

¶12         In addition, the family court questioned the sufficiency of Dr. Brownstein's affidavit submitted by Thomas to the Hawaii Department of Health in order to obtain his new birth certificate. The court noted that the affidavit, unlike the "typical" affidavit issued by Dr. Brownstein, indicated only that Dr. Brownstein performed "surgical procedures" for Thomas, and further, that Thomas never disclosed to Hawaii officials that he retained the ability to become pregnant. As the

family court had indicated at the time it directed the additional pleading, the court further found the marriage between Thomas and Nancy appeared to be a same-sex marriage, as the marriage was between a female (Nancy) "and a person born a female (Thomas), who at the time of the wedding was capable of giving birth and later did so."[6] As the Arizona Constitution does not recognize same-sex marriage,[7] the family court dismissed the Beaties' petition for dissolution of marriage for lack of subject matter jurisdiction.[8]

¶13      Nancy and Thomas timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## STANDARD OF REVIEW

¶14      Subject matter jurisdiction is a question of law, which we review de novo. *In re Marriage of Crawford*, 180 Ariz. 324, 326, 884 P.2d 210, 212 (App. 1994). We also review de novo constitutional issues and matters involving statutory interpretation. *McGovern v. McGovern*, 201 Ariz. 172, 175, ¶ 6, 33 P.3d 506, 509 (App. 2001).

---

[6]      The family court further stated: "The decision here is <u>not</u> based on the conclusion that this case involves a same-sex marriage merely because one of the parties is a transsexual male, but instead, the decision is compelled by the fact that the parties failed to prove that Petitioner [Thomas] was a transsexual male when they were issued their marriage license."

[7]      A.R.S. § 25-112(A) provides: "Marriages valid by the laws of the place where contracted are valid in this state, except marriages that are void and prohibited by § 25-101." Arizona's statute on prohibited marriages states, in pertinent part: "Marriage between persons of the same sex is void and prohibited." A.R.S. § 25-101(C).

[8]      In consideration of these issues, the family court received an amicus brief from the Transgender Law Center, and invited the Office of the Arizona Attorney General to submit an amicus brief on behalf of the people of Arizona. The Office of the Arizona Attorney General declined the invitation.

**DISCUSSION**

¶15     The question before this Court is not whether the State of Arizona allows same-sex marriage or divorce, but whether the laws of the State of Arizona allow a marriage, lawfully entered into in another state, between two persons the foreign state formally recognized at the time of the marriage as male and female, to be dissolved.  At the time of the Beaties' marriage in Hawaii, that state only allowed marriages between a man and a woman, and Hawaii's legislature, like Arizona's, had established statutory authority allowing persons who had undergone a sex change operation to apply for and obtain an amended birth certificate reflecting the appropriate gender.

¶16     Prior to marriage, Thomas complied with Hawaii's statutory requirements to amend the gender designation on his original birth certificate from female to male.[9]  However, after the filing of a petition for dissolution of that marriage in the State of Arizona, the family court ruled it lacked subject matter jurisdiction to dissolve the marriage, finding the married couple failed to provide sufficient evidence that their marriage could be recognized under Article 30, Section 1, of the Arizona Constitution, which states: "Only a union of one man and one woman shall be valid or recognized as a marriage in this state."  As explained below, we disagree with the family court.

¶17     Following the framework established by the family court, we center our discussion on Thomas's birth certificate.  Accordingly, we discuss the statutory authority underlying the authenticity of the certificate, and the rights accompanying an amended gender designation.

A.     **The Statutory Authority for Arizona's Recognition of Thomas's Amended Hawaii Birth Certificate**

      1. **The Requisites of Obtaining Amended Certificates of Birth in Hawaii**

¶18     H.R.S. § 338-17.7 provides in relevant part:

---

[9]     While the immediate case involves a transgendered male and a non-transgendered female, this Opinion would not be different in a circumstance where a transgendered female and non-transgendered male sought a Decree of Dissolution.

> (a) The department of health shall establish, in the following circumstances, a new certificate of birth for a person born in this State who already has a birth certificate filed with the department and who is referred below as the "birth registrant":
>
> . . . .
>
> (4) Upon receipt of an affidavit of a physician that the physician has examined the birth registrant and has determined the following:
>
> . . . .
>
> (B) The birth registrant has had a sex change operation and the sex designation on the birth registrant's birth certificate is no longer correct; provided the director of health may further investigate and require additional information that the director deems necessary.

¶19 When interpreting a statute, we first look to its language; if the statute's language is clear and unambiguous, we apply it without employing other principles of statutory interpretation. *Sheehan v. Flower*, 217 Ariz. 39, 40-41, ¶ 10, 170 P.3d 288, 289-90 (App. 2007). Hawaii uses that same principle of statutory interpretation. *Behr v. Lewin*, 852 P.2d 44, 60 (Haw. 1993). Unless otherwise defined, words in a statute are construed according to their plain and ordinary meaning. *U.S. Parking Sys. v. City of Phx.*, 160 Ariz. 210, 212, 772 P.2d 33, 35 (App. 1989); A.R.S. § 1-213; *see* H.R.S. § 1-14. In accordance with Hawaii principles of statutory interpretation, we will not read provisions into the statute that are not articulated by its express language. *See Williamson v. Haw. Paroling Auth.*, 35 P.3d 210, 222 (Haw. 2001).

¶20 The clear and unambiguous language of the above-referenced Hawaii statute requires only that an examining physician provide an affidavit, and that the affidavit indicate "the birth registrant has had a sex change operation and the sex designation on the birth registrant's birth certificate is no longer correct." H.R.S. § 338-17.7(a)(4)(B). In accordance with H.R.S. § 338-17.7, Thomas provided the State of Hawaii with an affidavit from Dr. Brownstein verifying he had undergone a sex change operation, as well as extensive hormonal and psychological treatment, and that the specific procedures and treatment qualified Thomas to be "legally considered male." Therefore, Thomas complied with the statute.

¶21    As addressed above, Thomas did not withhold his transgender status from Hawaii authorities. Additionally, however, under H.R.S. § 338-17.7(a)(4)(B), if Hawaii's Director of Health had any question about the nature or extent of the medical procedures Thomas had undergone, he had authority to "further investigate and require additional information" deemed necessary for the issuance of Thomas's amended birth certificate. Moreover, while the statutory language allows for further investigation by the Director of the Hawaii Department of Health if deemed appropriate, it does not expressly require any further detail or quantum of proof, and it was not within the authority of the family court to, *sua sponte,* expand the requisites of the Hawaii statute. Had the Hawaii legislature intended to require an applicant to submit a physician's affidavit specifying the precise nature of the surgery performed, that specific surgical procedures had, in fact, been completed, or that the birth registrant was no longer capable of procreation, it could have done so.

¶22    Therefore, the possibility of Thomas giving birth to children did not preclude him from legally amending his birth certificate under the plain language of the Hawaii statute. Further, there is no apparent basis in law or fact for the proposition that in the event Thomas gave birth after having modified his gender designation, it would have abrogated his "maleness," as reflected upon the amended birth certificate.

¶23    In that regard, the Hawaii Director of Health illustrated his conclusion that Thomas met the statutory requirements for his re-designation as male pursuant to H.R.S. § 338-17.7 by accepting the affidavit presented by Thomas without further inquiry. *See Verdugo v. Indus. Comm'n of Ariz.,* 108 Ariz. 44, 48, 492 P.2d 705, 709 (1972) ("This court has adhered to the general rule of law that public officers are presumed to have done their duty, and that acts of public officials are presumed to be correct and legal in the absence of clear and convincing evidence to the contrary." (internal citations omitted)); *see also Haley v. Dep't of Treasury*, 977 F.2d 553, 558 (Fed. Cir. 1992) ("'[T]here is a presumption that public officers perform their duties correctly, fairly, in good faith, and in accordance with the law and governing regulations.'") (quoting *Parsons v. United States*, 670 F.2d 164, 166 (Ct. Cl. 1982)); *Whitlock v. Brueggemann,* 682 F.3d 567, 586 (7th Cir. 2012) ("[C]ourts 'presume that public officials have properly discharged their official duties.'") (quoting *Banks v. Dretke*, 540 U.S. 668, 696 (2004)).

### 2. The Requisites of Amending Birth Certificates of Transgendered Persons in Arizona

¶24     There being no basis upon which to legally challenge Thomas's amended Hawaii birth certificate, that same birth certificate must be recognized by the State of Arizona, as Arizona itself permits the amendment of birth certificates for transgendered persons.  A.R.S. § 36-337 states in relevant part:

> (A) The state registrar shall amend the birth certificate for a person born in this state when the state registrar receives any of the following:
>
> . . . .
>
> 3. For a person who has undergone a sex change operation or has a chromosomal count that establishes the sex of the person as different than in the registered birth certificate:
>
> (a) A written request for an amended birth certificate from the person . . . .
>
> (b) A written statement by a physician that verifies the sex change operation or chromosomal count.

¶25     Unlike Hawaii, Arizona's more liberal standard only requires a "written statement" rather than an "affidavit" by a physician verifying a sex change operation.  A written statement is just that.  An affidavit, on the other hand, "is a signed, written statement, made under oath before an officer authorized to administer an oath or affirmation in which the affiant vouches that what is stated is true." *In re Wetzel*, 143 Ariz. 35, 43, 691 P.2d 1063, 1071 (1984); *see State v. Guthrie*, 108 Ariz. 280, 283, 496 P.2d 580, 583 (1972) (finding an unsworn written statement failed to meet the requirements of an affidavit). In addition, A.R.S. § 36-337 permits an amendment of gender designation based upon a sex change operation or chromosomal count.  However, consonant with H.R.S. § 338-17.7, Arizona's statute does not require specific surgical procedures be undertaken or obligate the applicant to forego procreation.[10]  As such, the

---

[10]     Similar to our reading of H.R.S. § 338-17.7, we will not read into A.R.S. § 36-337 a requirement not within the manifest intention of the legislature as expressed by the statute itself – such as a prohibition against giving birth as a prerequisite to gender redesignation. *State Farm Mut.*

sworn affidavit Thomas presented to the Director of the Hawaii Department of Health toward obtaining an amended birth certificate also met the requisites of Arizona's own statutory provision.

**B.      Full Faith and Credit Has Been Extended To the Beaties' Hawaii Marriage Through the Passage of Arizona Revised Statute § 25-112(A)**

¶26      Arizona has enacted an explicit extension of the federal Full Faith and Credit Clause to marriages entered into in other states, such as the State of Hawaii in the immediate matter, through its passage of A.R.S. § 25-112(A).  That statute provides that "[m]arriages valid by the law of the place where contracted are valid in this state, except marriages that are void and prohibited by § 25-101."  A.R.S. § 25-112(A).  Thomas and Nancy entered into marriage in Hawaii, which at the time restricted marriage to only occurring between a man and a woman.  Moreover, at the time Thomas and Nancy married, Thomas possessed dispositive, state-issued credentials reflecting his "male" status, and Nancy held similar credentials that dispositively reflected her "female" status.  Their marriage, therefore, was "valid by the law of the place where contracted," as reflected by the issuance of the marriage license by the State of Hawaii.  Consequently, Thomas and Nancy's marriage is also valid in this state, pursuant to § 25-112(A), as their marriage is between a man and a woman, and the strictures of § 25-101 do not preclude the marriage.  Specifically, their marriage is not void by virtue of sections A or B of that statute, and, in consideration of section C, it is not a "[m]arriage between persons of the same sex," as was determined by the State of Hawaii prior to the issuance of the Beaties' marriage license.

¶27      In interpreting and applying the nearly identical laws of Arizona and Hawaii regarding the issuance of amended birth certificates predicated upon transgendering, we are obligated to allow those who obtain such certificates the rights attributable to the assertions of their

---

*Auto. Ins. Co. v. White*, 231 Ariz. 337, 341, ¶ 14, 295 P.3d 435, 439 (App. 2013) (quoting *City of Tempe v. Fleming*, 168 Ariz. 454, 457, 815 P.2d 1, 4 (App. 1991)). Moreover, the right to have children is a liberty interest afforded special constitutional protection. *Skinner v. Okla. ex rel. Williamson*, 316 U.S. 535, 541 (1942) ("We are dealing here with legislation which involves one of the basic civil rights of man. Marriage and procreation are fundamental to the very existence and survival of the race.").

amended certificate — the same rights that would inure to one who had been issued that certificate at birth. *See Radtke v. Miscellaneous Drivers & Helpers Union Local No. 638 Health, Welfare, Eye & Dental Fund*, 867 F. Supp. 2d 1023, 1034 (D. Minn. 2012) ("The only logical reason to allow the sex identified on a person's original birth certificate to be amended is to permit that person to actually use the amended certificate to establish his or her legal sex for other purposes, such as obtaining a driver's license, passport, or marriage license."); *In re Ladrach*, 32 Ohio Misc. 2d 6, 9-10, 513 N.E.2d 828, 831-32 (Ohio Prob. Ct. 1987) (although finding under Ohio law, which did not allow transgender persons to amend their birth certificates, that a marriage license could not be issued to a post-operative female transsexual person and a male person, the probate court noted: "It seems obvious to the court that if a state permits such a change of sex on the birth certificate of a post-operative transsexual, either by statue or administrative ruling, then a marriage license, if requested, must issue to such a person provided all other statutory requirements are fulfilled."). To determine otherwise would run afoul of the equal protection clause of the U.S. Constitution. *See* U.S. Const. amend. XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.").

**¶28**        As the Beaties' Hawaii marriage was lawfully entered in Hawaii and is not deemed void by Arizona law, the marriage is valid within this state. Accordingly, the family court has subject matter jurisdiction to enter a decree of dissolution, presuming all other jurisdictional requirements are met.[11]

## CONCLUSION

**¶29**        For the foregoing reasons, we find the family court has subject matter jurisdiction to proceed with the Beaties' petition for dissolution of marriage and, ultimately, to enter a decree of dissolution, and therefore reverse the family court's dismissal of the Beaties' dissolution petition. In this case, the family court also issued orders regarding child custody, child support, and property division, which the Beaties also appealed. *See supra* ¶ 1 n.1. Given the interrelated nature of these issues with a marital dissolution, we remand the entirety of the issues raised on appeal to the family court for further proceedings consistent with this opinion.

---

[11]        See A.R.S. § 25-312.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh