Because I disagree with the majority and the trial court's analysis, I respectfully dissent.
In deciding whether or not to grant this name change, the trial court had to determine whether there was "proof that *** the facts set forth in the application show reasonable and proper cause for changing the name of the applicant." R.C. 2717.01 (A). The language of the statute is permissive and grants discretion to the trial court. Citing In re Hall
(1999), 135 Ohio App.3d 1, 3, the majority states that the standard of review for a name change case is abuse of discretion.[3]
In support of its decision, the trial court made seven conclusions of law which must be examined to see if they demonstrate an abuse of discretion. To facilitate this analysis, the conclusions of law will not be reviewed in the same order that they were listed by the trial court.
The trial court's first conclusion of law is simply a partial restatement of the name change statute.[4] The fourth conclusion of law is a factual finding.[5] I take no issue with these conclusions of law.
The trial court's third conclusion of law states: "In dealing with name change applications, it is the Court's responsibility to insure against the possibility that its order would lend legal credence to confusing or misleading the public in its dealings with the applicant." The trial court's denial of appellant's name change is in part based upon this conclusion of law. In its opinion, the trial court indicated that appellant "sought the name change in order to facilitate his intention to portray himself as a woman to members of the general public." Evidently, the trial court believed that to grant this name change would somehow perpetuate a fraud on the general public.
There are several problems with this line of reasoning. First, many people have names that are confusing to the public in that they do not indicate whether the person they name is male or female. Consider such names such as Chris, Jamie, Kim, Kelly, Leslie, Max, Pat, Robin, and so on, which can be used for either gender. Consider original names that seem to have no gender associated with them by the general public, names such as Echo, Leaf, Trula, Oasis, Touche, Especuliar, Hasini, Shake, Moon, Seven, Ry-zing, Exree and so on. These names are actual names documented and held by living persons. Should the courts not allow individuals to adopt these names because they might confuse the public?
Second, whether or not the court grants this name change request will not change how appellant chooses to dress and present himself. As another appellate court noted in a name change case also involving a transsexual, the applicant's dress and presentation is "an accomplished fact in this case, a matter which is of no concern to the judiciary, and which has no bearing upon the outcome of a simple name change application." In the Matter of the Application of Eck (1991),245 N.J. Super. 220, 223. Because the trial court's decision will not affect this transsexual's sexual manner and dress, it will be even more confusing to the public not to allow appellant to change his name to Susan. While saddled with a male name and a female visage, appellant must constantly convince the public that his name is "Richard." Should appellant be permitted to change his name to "Susan," the general public's outward perception of appellant would be consistent with appellant's legal name.
The trial court's fifth conclusion of law states: "It is not reasonable and proper to approve the request of a man to change his name to that of a woman, when the man's chromosomes, gonads and genitals are that of a man." As previously stated, there is not a designated list of female names and male names. Such a designation cannot be found in the name change statute or in Ohio case law. Because there is no such designation, it would be impossible to consistently follow this conclusion of law.
Even if we were to assume that everyone agrees that "Susan," the name appellant has requested to make his own, is essentially a feminine name, nothing in the law prohibits a biological male from having the name Susan. It would be perfectly legal for parents to name their infant son "Susan." Although this could arguably mislead the public as to the sexual identity of the infant child, such an action would not be unlawful in any way.
The trial court's sixth conclusion of law states: "It is not reasonable and proper to approve the request of a man to change his name to that of a woman, when the man has only a generalized gender dysphoria, has no concurrent intersex condition, and has not undergone any form of sex reassignment surgery."
In its opinion, the trial court wrote:
 In applying the Ohio standard of "reasonable and proper" to the case of a man seeking a change of name to that of a woman, several factors may be considered. One factor that may be considered is whether the man has a chromosomal sex disorder. In this case no evidence was offered that Richard Maloney has a chromosomal sex disorder. A second factor that may be considered is whether there is any evidence that the man has a gonadal sex disorder. In this case no evidence was offered that Richard Maloney has a gonadal sex disorder. A third factor that may be considered is whether there is any evidence that the man has an internal organ anomaly. In this case no evidence was offered that Richard Maloney has an internal organ anomaly. A fourth factor that may be considered is whether there is any evidence that the man has an external organ anomaly. In this case, no evidence was offered that Richard Maloney has an external organ anomaly. A fifth factor that may be considered is whether there is any evidence that the man has a hormonal disorder. In this case no evidence was offered that Richard Maloney has a hormonal disorder. (Footnotes omitted.)
 The court found it appropriate to adopt the above list of five factors to consider when determining if this name change is "reasonable and proper." The trial court indicates that these five factors are taken from a list of disorders documented in an Arizona Law Review article. See Greenburg, Defining Male and Female: Intersexuality and the Collusion Between Law and Biology (1999), 41 Ariz.L. Review 265. The author's complete list of disorders are as follows: chromosomal sex disorders; gonadal sex disorders; internal organ anomalies; external organ anomalies; hormonal disorders; gender identity disorders; and surgical creation of an intersexed condition. Id. at 275-278. However, the trial court only acknowledges the first five disorders as factors to consider and omits the disorder that appellant currently suffers from, gender identity disorder. The trial court made the factual finding that appellant has been diagnosed as suffering from gender identity disorder.[6]
Therefore, even if the trial court was justified in adopting the disorders established in Greenburg's article as the factors to consider in deciding this name change case, the trial court should have found that appellant suffered from one of the disorders and granted the name change accordingly.
As stated above, the sixth conclusion of law further states that it is not reasonable and proper to approve appellant's request where he "has not undergone any form of sex reassignment surgery." This should be considered alongside the trial court's seventh conclusion of law, which states: "The facts set forth in the application and proof offered in support thereof do not show reasonable and proper cause for changing the name of the applicant."
In his application, appellant stated that having this name change was a requirement for sexual reassignment surgery. The majority discussed this point in detail, stating the following:
 The trial court's denial of appellant's name change application is partially premised on its belief that appellant's decision to change his name was made without regard to the possibility that he would change his mind once going through the real life experience.
 As well, appellant framed the reason for the name change as "sex reassignment surgery" on his petition. The evidence presented shows that he was not scheduled for such surgery, and there was no evidence that the surgery would take place in the immediate future. Appellant failed to prove the facts set forth in his name change petition. Reviewing the trial court's decision in its entirety, we do not find that the trial court acted in an unreasonable, arbitrary or unconscionable manner.
 The majority agrees with the trial court that appellant failed to show that he had sufficient reason for a name change.
The trial court heard testimony from appellant and his psychiatrist that "a man considering sex reassignment surgery should live for at least one year as a woman before such surgery should be performed." The trial court gave no indication that it disputed this statement and made no finding to the contrary. Appellant testified that in order to live as a woman, he needs a woman's name. In essence, the trial court's denial of the name change prevents appellant from completing the prerequisites for the sex change surgery it suggests would merit a name change.
The trial court, as well as the majority, expresses a concern that appellant might change his mind. This is nothing more than mere speculation. Appellant has taken female hormones, which can have irreversible affects; he has sought professional psychiatric help regarding this personal issue for over three years; and he testified that he has felt that he was a woman at his core since age six. Considering the evidence presented to the trial court, there was no reason to doubt appellant's dedication and sincerity in his desire to be a woman. Moreover, if appellant changes his mind and decides to live as a man, appellant should again be able to change his name. I disagree with the trial court and majority's conclusion that appellant failed to show a reasonable and proper cause for granting this name change.
There is no evidence that appellant has requested this name change for any fraudulent purpose. Under the common law, an individual can change his name to anything he or she chooses provided the adaptation is not for fraudulent purposes. Bobo v. Jewell (1988), 38 Ohio St.3d 330, 333, citing Pierce v. Brushart (1950), 153 Ohio St. 372, 380. The name change statute should be interpreted consistent with the common law it codifies. Interpreting R.C. 2717.01, one Ohio court found that as long as there is no intent to defraud creditors or deceive others and the applicant acted in good faith, the name change petition should be granted. In re Ladrach (P.C. 1987), 32 Ohio Misc.2d 6. In the present case, granting the statutory name change serves the public's interest. As the Utah Supreme Court observed, applications for name change should be encouraged "since the statutory process provides protection for both the applicant and the general public by producing a public record to document the change." In re Cruchelow (Utah 1996), 926 P.2d 833, 834.
Finally, the trial court's second conclusion of law states: "Court approved name changes receive an aura of propriety and official sanction." Although the trial court does not explicitly say so, considering its other conclusions of law in combination with its written opinion, it seems that the trial court denied this name change request, in part, because it did not want to bestow an "official sanction" upon an adult male transsexual's adoption of the name Susan.
The language that the trial court uses in this conclusion of law was used by this court in another recent name change case, In re Bicknell
(Feb. 12, 2001), Butler App. Nos. CA2000-07-140, CA2000-07-141. Although I authored a dissenting opinion in that case, the majority wrote:
 A name change application becomes subject to judicial scrutiny because the applicant is requesting court approval of the name change. "An inevitable by-product of the statutory process is the result that the judicial imprimatur is placed upon the change of name lending it the aura of propriety and official sanction." Matter of Linda Ann A. (N.Y.Sup.Ct. 1984), 480 N.Y.S.2d 996, 997. Because of these considerations, we find that the "reasonable and proper" standard provided in R.C. 2717.01
includes judicial scrutiny regarding whether a requested name change is consistent with public policy. (Emphasis added.)
After reviewing Ohio law, the majority ultimately concluded:
 We find that there is support for the trial court's determination that Ohio law favors solemnized marriages and that cohabitation contravenes this policy. Accordingly, the trial court did not abuse its discretion by finding that court sanctioning of the use of the same surname by two unmarried cohabitants is against Ohio's public policy promoting marriage.
 In the case now before us, appellant testified that he lives his life as a transsexual male and seeks a name change to continue living this lifestyle. Although transsexuals may not be understood or even socially accepted by the general public, there is nothing illegal about the transsexual lifestyle nor does this lifestyle contravene any public policy of the state of Ohio. It was not the trial court's place to use legal language as a mask of its moral view of appellant's transsexual lifestyle in denying this name change request.
The trial court has arbitrarily justified its denial of this name change petition. For all the reasons presented, I find that the trial court abused its discretion by handling this case with an unreasonable, arbitrary, and unconscionable attitude. Therefore, I would reverse the trial court's decision and grant the name change petition.
[3] The Supreme Court of Ohio has not used the term "abuse of discretion" in its opinions that review a court's decision to grant or deny a name change. See In re Willhite (1999), 85 Ohio St.3d 28; Bobov. Jewell (1988), 38 Ohio St.3d 330. This gives us reason to ask whether abuse of discretion is the proper standard of review to use in a name change case. However, I will apply the abuse of discretion standard to this analysis, acknowledging that this court has previously applied this standard and the majority does so again here. See In re Bicknell (Feb. 12, 2001), Butler App. Nos. CA2000-07-140, CA2000-07-141, unreported.
[4] The first conclusion of law states: "Under R.C. 2717.01 a court may change the name of an applicant upon proof that the facts are set forth in the application show reasonable and proper cause for changing the name of the applicant."
[5] The fourth conclusion of law states: "Gender dysphoria is a general sense of discomfort or dissatisfaction with the body that one has been given."
[6] The trial court's fourth finding of fact states: "Applicant has been diagnosed as suffering from gender dysphoria." The fifth finding of fact states: "Gender dysphoria or gender identity disorder is a mental disorder." (Emphasis added.)