OPINION
{¶ 1} This is an appeal from the Tuscarawas County Common Pleas Court, Probate Division, denying the Application for Correction of the Birth Record of Angelica Maribel Lopez.
 {¶ 2} This case comes to us on the accelerated calendar. App. R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:
 {¶ 3} A(E) Determination and judgment on appeal. The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance wh App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form.
 {¶ 4} This appeal shall be considered in accordance with the aforementioned rule.
 STATEMENT OF THE FACTS AND CASE {¶ 5} On October 9, 2003, Appellants Agustina Rodriguez-Lopez and Juan Lopez-Raymundo filed a Correction of Birth Record Application for correction of their daughter's birth certificate with Tuscarawas County Probate Court pursuant to R.C. 3705.15.
 {¶ 6} The application requested that the following corrections be made to the birth certificate of Angelica Maribel Lopez:
 {¶ 7} The mother's name should be changed from Jacqueline Torres to Agustina Rodriguez-Lopez; the mother's maiden surname should be changed from Lopez to Rodriguez-Lopez; that mother's date of birth should be changed from 12/14/1972 to 8/28/1966; the mother's age should be changed from 25 to 32; and the father's name should be changed from Juan Lopez to Juan Lopez-Raymundo.
 {¶ 8} On October 9, 2003, the trial court scheduled the application for hearing before a Magistrate on November 15, 2003.
 {¶ 9} On October 15, 2003, Appellants made a motion to appoint a Spanish language translator.
 {¶ 10} On October 22, 2003, Appellants filed a Memorandum of Law in Support of Motion to Appoint Interpreter.
 {¶ 11} On October 24, 2003, the Magistrate denied the motion for a translator.
 {¶ 12} On November 3, 2003, Appellant's filed a motion to set aside the magistrate's decision denying their motion.
 {¶ 13} The trial court reviewed said motion, and by Judgment Entry filed December 18, 2003, denied same and approved the Magistrate's decision. The hearing on the merits was scheduled for February 2, 2004.
 {¶ 14} The trial court then sua sponte issued a subpoena to Union Hospital in Dover, Ohio, seeking records concerning the birth of Appellants' daughter.
 {¶ 15} On January 30, 2004, the trial court issued a letter to appellants' counsel including therewith the redacted records provided by the hospital in response to said subpoena.
 {¶ 16} On February 2, 2004, the application came on for hearing before the trial court. Appellants brought a translator named Olga Bravo to the hearing.
 {¶ 17} At said hearing, Appellant-Mother testified that her real name is Agustina Rodriguez-Lopez and presented a photocopy of her Guatemalan identification card, known as a cedula, to the court. In addition to her full name, this document also identified her birth date as being August 28, 1966.
 {¶ 18} Ms. Rodriguez-Lopez testified that when she went o Union Hospital to give birth to her daughter, she presented the hospital with false identification. She claims that she was afraid because she did not have any American identification. She testified that she did not possess a social security number or have any health insurance. (T. at 6).
 {¶ 19} Appellant-Mother further testified that Angelica's father was Juan Lopez-Raymundo, that he was the man who was seated next to her in the courtroom, and that they had lived together for eight or nine years. (T. at 7). She informed the court that she wanted his name corrected on the birth record be cause in addition to wanting the child's father's name to appear correctly, correcting his name on the birth certificate would also be a benefit to him in his immigration case. Id.
 {¶ 20} On May 27, 2004, the trial court filed its Order denying the application to correct the birth certificate of Angelica Maribel Lopez.
 {¶ 21} On June 24, 2004, Appellants filed the instant appeal, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 22} "I. The trial court abused its discretion in denying the application for correction of the birth record.
 {¶ 23} "II. The trial court erred and abused its discretion in failing to appoint a translator to assure appellant with the fair hearing required by due process and equal protection."
 I. {¶ 24} In their first assignment of error, Appellants argue that the trial court abused its discretion in denying the application for correction of the birth record. We disagree.
 {¶ 25} The procedure for correcting a birth record is controlled by R.C. 3705.15, which reads in pertinent part as follows:
 {¶ 26} "Whoever claims to have been born in this state, and whose registration of birth is not recorded, or has been lost or destroyed, or has not been properly and accurately recorded, may file an application for registration of birth or correction of the birth record in the probate court of the county of the person's birth or residence or the county in which the person's mother resided at the time of the person's birth. If the person is a minor the application shall be signed by either parent or the person's guardian.
 {¶ 27} "(A) An application to correct a birth record shall set forth all of the available facts required on a birth record and the reasons for making the application, and shall be verified by the applicant. Upon the filing of the application the court may fix a date for a hearing, which shall not be less than seven days after the filing date. The court may require one publication of notice of the hearing in a newspaper of general circulation in the county at least seven days prior to the date of the hearing. The application shall be supported by the affidavit of the physician in attendance. If an affidavit is not available the application shall be supported by the affidavits of at least two persons having knowledge of the facts stated in the application, by documentary evidence, or by other evidence the court deems sufficient.
 {¶ 28} "The probate judge, if satisfied that the facts are as stated, shall make an order correcting the birth record, except that in the case of an application to correct the date of birth, the judge shall make the order only if any date shown as the date the attending physician signed the birth record or the date the local registrar filed the record is consistent with the corrected date of birth. If supported by sufficient evidence, the judge may include in an order correcting the date of birth an order correcting the date the attending physician signed the birth record or the date the local registrar filed the record."
 {¶ 29} The standard of review for a denial of an application pursuant to R.C. 3705.15 is abuse of discretion. In re Hall
(1999), 135 Ohio App.3d 1.
 {¶ 30} In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. We must look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 31} In the case sub judice, the trial court denied the application because it was not "satisfied that the facts [were] as stated" as required by R.C. 3705.15(A). The trial court, in its decision denying the application, stated that it had "taken a tremendous amount of time to contemplate this matter and attempt to reach a decision that would assist this family without being contrary to law." The trial court then went on to state the following concerns:
 {¶ 32} "4. On February 4, 2004, Attorney Renner presented the Court with a Xeroxed copy of a Guatemalan identification document . . .
 {¶ 33} "5. The Court is troubled by the use of this particular xeroxed document. First, the Court was given no explanation as to why the Petitioner did not use this information at the hospital if it is indeed authentic. Secondly, the picture on this copy is illegible, making it almost meaningless as evidence."
 {¶ 34} "6. Attorney Renner is an attorney with many years of experience and is an active advocate for the Guatemalan immigrants in Tuscarawas County. He clearly knew that the issue of the instant hearing concerned the identification of his client. It is obvious that the picture on the Xeroxed documents he used was not legible. Surely, Mr. Renner could not be so careless as to miss this detail.
 {¶ 35} "7. Despite the fact that his client's identity was at stake, Mr. Renner made no attempt to show the Court the original document which would have contained a legible picture, nor did he make any attempt to explain why that may not have been possible.
 {¶ 36} "8. No identification documents were provided on behalf of the man accompanying the Petitioner whom she claims is her child's father. He did not provide the Court with any testimony at all and he was simply identified by the mother of Angelica.
 {¶ 37} "9. . . .
 {¶ 38} "10. The affidavit was signed by Dr. Delacruz on October 7, 2003, almost five years after the birth of this child. In this instance, the Court is left to ponder whether or not Dr. Delacruz has actually been informed as to the information he is verifying in this particular case or if he has been led o believe that he was signing an affidavit to help correct a routine clerical error.
 {¶ 39} "11. If Dr. Delacruz, in fact, has actual knowledge of the identity of the persons in question, it is unfortunate that Attorney Renner failed to utilize this piece of evidence in a more complete manner. If Dr. Delacruz does not possess such knowledge, the Court certainly questions the ethical use of this document and it should not have been supplied to the Court in order to verify the truth of the proposed corrections.
 {¶ 40} "Therefore, it is with much regret that this Court feels compelled to deny the instant motion of the Petitioner to correct the birth record of Angelica Maribel Lopez."
 {¶ 41} As a reviewing court, we should presume that the trial court's findings are accurate, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and use these observations in weighing the credibility of the witnesses.
 {¶ 42} Upon review, we find that based upon the concerns stated by the trial court after having heard the testimony and reviewing the documents presented, the trial court did not abuse its discretion by denying the subject application. It is obvious that the trial court was not "satisfied that the facts [were] as stated."
 {¶ 43} Appellants' first assignment of error is overruled.
 II. {¶ 44} In their second assignment of error, Appellants argue that the trial court erred in denying their motion for appointment of a translator. We disagree.
 {¶ 45} Again, the standard of review is abuse of discretion.
 {¶ 46} Appellants argue that by denying the appointment of the translator, they were in effect denied access to the legal system.
 {¶ 47} However, upon review, we find such not to be the case.
 {¶ 48} Appellants, in their own brief and in their motion for appoint of the translator, acknowledge that R.C. 2301.12 permits, but does not require, courts of common pleas to appoint an interpreter.[1]
 {¶ 49} As stated in the Magistrate's Order of October 24, 2003, Appellants had "the burden of presenting appropriate evidence before the Court" in the case sub judice.
 {¶ 50} Upon reviewing the Magistrate's Order, which was later adopted by the trial court, we find that the court explained in its order that it was willing to accommodate Appellants by allowing them to "bring personal acquaintances, friends, co-workers, and/or relatives to Court who can speak both languages well enough." (Magistrate's Order, Oct. 24, 2003). Appellants did in fact find and bring a translator to the hearing.
 {¶ 51} We find no abuse of discretion in the trial court's decision to deny the appointment of a translator in this situation.
 {¶ 52} Appellants' second assignment of error is overruled.
 {¶ 53} The decision of the Tuscarawas County Probate Court is affirmed.
Boggins, J. Farmer, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed. Costs assessed to Appellant.
[1] R.C. 2301.12 Appointments by Court of Common Pleas
The court of common pleas of a county may appoint:
(A) A court interpreter, who shall take an oath of office, hold his position at the will and under the direction of the court, interpret the testimony of witnesses, translate any writing necessary to be translated in court, or in a cause therein, and perform such other services as are required by the court. . . .