NEMCEK et al., Plaintiffs,

v.

PASKEY et al., Defendants.

2006-Ohio-2059.]

Court of Common Pleas of Ohio,
Probate Division, Trumbull County.

No. 2006 CVA 0007.

Decided April 6, 2006.

Ellen Essig, for plaintiffs.

Kristin Lee Paskey and Samuel Joseph Paskey, pro se.

Teresa Rice Daugherty, guardian ad litem.

---

SWIFT, Judge.

{¶ 1} This matter came before the court on the complaint for a judgment declaring the plaintiffs to be the parents of an unborn child and for an order that the birth certificate reflect their status as parents of the child to be born to the defendants.

{¶ 2} The plaintiffs, Mark Andrew Nemcek and Felicia Noel Nemcek, are husband and wife and reside in the state of Nevada. The defendants, Kristin Lee Paskey and Samuel Joseph Paskey, are husband and wife and reside in Trumbull County, Ohio. The plaintiffs and defendants are personal friends. The plaintiffs are represented by Ellen Essig, Esq., and the defendants entered their appearance pro se. The defendants filed a waiver of service of summons of the complaint and a consent to judgment. The court appointed Teresa Rice Daugherty, Esq., as guardian ad litem to protect the interests of the unborn child.

{¶ 3} The plaintiffs and defendants have filed an affidavit of stipulated facts that avers as follows:

{¶ 4} The plaintiffs are unable to conceive and carry a child. The plaintiffs and defendant Kristin Lee Paskey entered into a surrogacy agreement on June 29, 2005, in Nevada. The agreement provides that there shall be no compensation paid to either party other than reimbursement or compensation to the gestational surrogate for confinement and medical expenses incurred as a result of the contract. Kristin Lee Paskey agreed to serve as a surrogate and in Las Vegas, Nevada she was implanted with an egg harvested from the plaintiff, Felicia Noel Nemcek, and fertilized with the sperm of Nemcek's husband, plaintiff Mark Andrew Nemcek. The collection, in-vitro fertilization, and implantation procedures were conducted under the medical supervision of Dr. Said Daneshmand of Las Vegas, Nevada. The defendants abstained from any sexual intercourse during this time period, as instructed by Dr. Said Daneshmand.

{¶ 5} Kristen Lee Paskey is pregnant, and the parties allege and agree that the child is the genetic or biological child of the plaintiffs and not the genetic or biological child of the gestational surrogate carrier and her husband. The report of the guardian ad litem states that the parties have agreed that genetic (DNA)

testing will be completed upon the birth of the child as evidence of the true genetic heritage of the child.

{¶ 6} No statutory law in Ohio addresses surrogacy agreements or the issuance of birth certificates to children born pursuant to surrogacy agreements. The plaintiffs request that this probate court make a parentage determination that they are the natural and legal parents of the unborn child carried by the gestational surrogate.

{¶ 7} The Ohio Parentage Act enacted as R.C. Chapter 3111 governs the determination of parentage. R.C. 3111.01 provides as follows:

(A) As used in sections 3111.01 to 3111.85 of the Revised Code, "parent and child relationship" means the legal relationship that exists between a child and the child's natural or adoptive parents and upon which those sections and any other provision of the Revised Code confer or impose rights, privileges, duties, and obligations. The "parent and child relationship" includes the mother and child relationship and the father and child relationship.

(B) The parent and child relationship extends equally to all children and all parents, regardless of the marital status of the parents.

The parent-and-child relationships between a child and the child's natural mother may be established by proof of the mother's having given birth, a juvenile court parentage action, or an acknowledgment of paternity and administration determination with the Child Support Enforcement Agency ("CSEA") pursuant to R.C. 3111.02(A). The parent-and-child relationship between a child and the child's natural father may be established by a voluntary acknowledgment of paternity, a juvenile court parentage action, or an administrative determination of paternity with CSEA pursuant to R.C. 3111.02(A).

{¶ 8} R.C. 3111.03 provides that a man is presumed to be the natural father of the child when the man and the child's mother are married. The presumption may be rebutted by clear and convincing evidence that includes the results of genetic testing.

{¶ 9} An action to determine the existence or nonexistence of the father-and-child relationship may be brought by the child, the child's personal representative, the mother, the mother's personal representative, the alleged father, the alleged father's personal representative, or the CSEA in the county where the child's mother resides if the mother is a recipient of public assistance, R.C. 3111.04. Any interested party may bring an action to determine the existence or nonexistence of a mother-and-child relationship, R.C. 3111.17.

{¶ 10} R.C. 3111.381, as currently enacted, requires that an administrative determination of the existence or nonexistence of a parent-and-child relationship be made prior to bringing an action in juvenile court to establish parentage,

except when the alleged father is deceased and his estate is being administered. Then the probate court has jurisdiction to determine the parent-child relationship. The issue of parentage arises in a domestic-relations action for divorce, dissolution of marriage, or legal separation, or in a juvenile court that issued a support order if the issue of parentage arises in the course of the support. R.C. 3111.381 has been amended, and effective May 17, 2006, a court action requesting an order to determine the allocation of parental rights and responsibilities may be filed without first seeking an administrative determination. R.C. 3111.89 specifically provides that R.C. 3111.88 to 3111.96 pertaining to artificial insemination do not deal with surrogate motherhood.

{¶ 11} Following a judicial determination or CSEA administrative finding of a parent-child relationship, the department of health is to prepare a new birth certificate consistent with the court's findings or agency's determination. R.C. 3111.18 and 3111.58.

{¶ 12} Plaintiffs cite R.C. Chapter 2721, R.C. 2101.24, and R.C. 3705.09 as authority for the probate court's jurisdiction to determine parentage. The probate court has jurisdiction to render declaratory judgments pursuant to R.C. Chapter 2721 and R.C. 2101.24. However, the probate court is a court of limited jurisdiction, and probate proceedings are restricted to those actions permitted by statute and by the constitution. *Corron v. Corron* (1988), 40 Ohio St.3d 75, 531 N.E.2d 708. The probate court's jurisdiction is restricted to matters properly before the court. Id. (probate court had no jurisdiction to decide validity of will that was not admitted to probate and the matter was not properly before the court); *State ex rel. Lipinski v. Cuyahoga Cty. Common Pleas Court* (1995), 74 Ohio St.3d 19, 655 N.E.2d 1303 (probate court had jurisdiction over declaratory judgment to determine validity of inter vivos transfers of property when the property would revert back to the estate if the transfers are invalidated). "Statutes which create a declaratory judgment procedure do not extend the jurisdiction of the subject matter of a court but rather extend the power of the court to grant declaratory relief within its respective jurisdiction. In other words, declaratory judgment statutes provide an additional remedy which may be granted by a court but they do not extend the jurisdiction as to the subject matter upon which a court may act." *Ryan v. Tracy* (1983), 6 Ohio St.3d 363, 6 OBR 416, 453 N.E.2d 661, citing *State ex rel. Foreman v. Bellefontaine Mun. Court* (1967), 12 Ohio St.2d 26, 41 O.O.2d 159, 231 N.E.2d 70.

{¶ 13} Plaintiffs also rely on the Summit County Probate Court case *Belsito v. Clark* (1994), 67 Ohio Misc.2d 54, 644 N.E.2d 760 as precedent for this court's jurisdiction. In *Belsito*, the court declared that the genetic parents were the natural and legal parents of an unborn child carried by a surrogate mother and ordered that the birth certificate reflect the legitimate status of the child. At the

time of *Belsito*, the probate court had jurisdiction of acknowledgments of paternity pursuant to R.C. 2105.18. As of January 1, 1998, R.C. 2105.18 was repealed, and acknowledgments of paternity are now filed with the CSEA pursuant to R.C. 5101.314.

{¶ 14} The issuance of birth certificates in Ohio is governed by R.C. Chapter 3705, which establishes a statewide system of vital statutes. R.C. 3705.09 provides that for each live birth, a birth certificate shall be prepared by the person in charge of the institution where the birth occurred or their designated representative. Probate court's jurisdiction pertaining to birth certificates is limited to ordering the registration of an unrecorded birth and the correction of a birth record. R.C. 3705.15.

{¶ 15} The court finds that there are no statutory or constitutional sections granting it authority to render a declaratory-judgment action to determine parentage and to issue an order directing the hospital expecting to deliver the unborn child to designate the genetic or biological parents as the natural and legal parents of the child. The court finds that it lacks subject-matter jurisdiction to determine parentage of an unborn child that is the subject of a surrogacy agreement in a declaratory-judgment action. The legislature should consider enacting legislation that addresses the legal rights of children born under surrogacy agreements.

{¶ 16} Therefore, it is ordered that this matter be and hereby is dismissed, because the court lacks subject-matter jurisdiction.

So ordered.