[Cite as *In re Application for Correction of Birth Record of Adelaide*, 2022-Ohio-2053.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| | : | |
| | : | |
| | : | |
| IN RE: APPLICATION FOR | : | Appellate Case No. 2022-CA-1 |
| CORRECTION OF BIRTH RECORD | : | |
| OF HAILEY EMMELINE ADELAIDE | : | Trial Court Case No. 20219090 |
| | : | |
| | : | (Appeal from Common Pleas |
| | : | Court – Probate Division) |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of June, 2022.

. . . . . . . . . . .

MAYA SIMEK, Atty. Reg. No. 0086674, 2121 Euclid Avenue, LB 138, Cleveland, Ohio 44115, and

CHAD M. EGGSPUEHLER, Atty. Reg. No. 0094094 & DANIELLE M. EASTON, Atty. Reg. No. 0099591, 950 Main Avenue, Suite 1100, Cleveland, Ohio 44113
        Attorneys for Plaintiff-Appellant

. . . . . . . . . . . . .

LEWIS, J.

{¶ 1} Plaintiff-Appellant Hailey Emmeline Adelaide appeals from a decision of the Clark County Common Pleas Court, Probate Division, denying her application to change the sex marker on her[1] birth certificate. For the reasons that follow, the judgment of the probate court is affirmed.

## I. Facts and Procedural History

{¶ 2} Adelaide was born in 1973 in Clark County, Ohio. The birth certificate identified Adelaide as Brian Edward Deboard and the sex marker was checked as male. In September 2021, Adelaide filed an application in the Clark County Probate Court for a change of name from Brian Edward Deboard to Hailey Emmeline Adelaide pursuant to R.C. 2717.02. The following month, Adelaide filed an application in a second case for correction of her birth record pursuant to R.C. 3705.15, asking to change the sex marker designation on her birth certificate from male to female. Included with the application was an affidavit from Adelaide and a copy of a notarized affidavit from William Ford, Adelaide's mental health care provider. Both affidavits were completed on the Supreme Court of Ohio Form 30.0 application for correction of birth record. Adelaide filed a brief in support of the correction application.

{¶ 3} The two cases were consolidated for a hearing, which was held on November 15, 2021. Adelaide presented her own testimony along with a copy of an unfiled but completed Form 30.0, which mostly mirrored the original application, but included the request for both the sex marker change and the name change. She also submitted a

---

[1] Adelaide refers to herself with the pronouns "she/her" and we will likewise use those terms in conformity with her brief.

copy of a letter signed by William Ford, a clinical intern, and Dr. John P. Layh, a clinical psychologist supervisor. The letter stated that it was written "[i]n support of the sexual identity validity of Ms. Hailey Deboard, I find her to be consistent in mental competency exhibiting true authenticity both in self-awareness and introspection. I, William H. Ford, Sr., MRC, acknowledge and attest to the sexual identity of Ms. Hailey DeBoard (sic) as 'female' both psychologically and in lifestyle gender expression."

{¶ 4} Adelaide testified she was born in 1973 at the Clark County Community Hospital in Clark County, Ohio, and had resided in that county most of her life. She was born with biologically male anatomy but began believing she was a female at the age of four years old. Adelaide currently identifies as female. She came out in July 2020 and had been seeing her mental health therapist, Bill Ford, for almost a year. She testified that she believed there was an error on her birth certificate when her sex marker was checked off as male, because the male sex marker did not take into account her mental state.

{¶ 5} At the conclusion of the hearing, the probate court orally granted Adelaide's application for a change of name but withheld a decision on her application for a correction of her sex marker. After the hearing, Adelaide filed a brief in support of her application to correct the sex marker, in which she stressed the importance of *Ray v. McCloud*, 507 F.Supp.3d 925 (S.D.Ohio 2020).

{¶ 6} On December 2, 2021, the probate court issued a written decision denying Adelaide's request to correct the sex marker. In addressing the case of *Ray v. McCloud*, the probate court concluded that the case did not address the authority of the Ohio

probate courts to issue the order requested. The probate court stated that the "sole question before this Court is whether or not this Court enjoys the statutory authority to permit it to order such a change." Decision at p. 2. The court rejected Adelaide's arguments that the word "sex" and the phrase "has not been properly and accurately recorded" were ambiguous and instead applied the plain meaning of R.C. 3705.15. Unlike other statutes that allow the probate court to change information on one's birth certificate due to changes that occur in life, such as the person's name or parent's names after adoption, the probate court found that nothing in R.C. 3705.15 specifically granted the probate court authority to issue a change of the sex marker, unless it was originally made in error. Because the initial recording of Adelaide's male sex marker at birth correctly noted that she was born with biologically male anatomy, and her current physical anatomy supported the determination of male on the sex marker of her birth certificate, the probate court found there was nothing to be corrected pursuant to R.C. 3705.15.

{¶ 7} This appeal timely followed.

## II.    Assignments of Error

{¶ 8} Adelaide raises the following two assignments of error:

THE PROBATE COURT ERRED AS A MATTER OF LAW BECAUSE ITS ORDER DENYING THE BIRTH CERTIFICATE CORRECTION FAILED TO GIVE DUE RESPECT TO THE CONSTITUTIONAL RULINGS IN *RAY II*, THE PRINCIPLES OF WHICH ARE RECOGNIZED BY OHIO COURTS AND SHOULD HAVE CONTROLLED HERE.

THE PROBATE COURT ERRED AS A MATTER OF LAW BECAUSE ITS ORDER DENYING THE BIRTH CERTIFICATE CORRECTION IN THE FACE OF UNDISPUTED FACTS RESTED ON A RESTRICTIVE INTERPRETATION OF R.C. 3705.15 THAT ADDED LIMITS NOT CONTAINED IN THE TEXT.

**{¶ 9}** In her assignments of error, Adelaide argues that the probate court failed to give due weight to the constitutional rulings identified in *Ray v. McCloud*, 507 F.Supp.3d 925, which she contends required a broad reading of the applicable statutory language. She also challenges the probate court's determination that R.C. 3705.15 did not authorize the court to change Adelaide's sex marker on her birth certificate based on the statutory language. Both of the assignments of error present arguments relating to the statutory interpretation of R.C. 3705.15. As a result, we will address the assignments of error together.

### III. Standard of Review

**{¶ 10}** Generally, an appellate court reviews a denial of an application pursuant to R.C. 3705.15 for an abuse of discretion. *In re Application for Correction of Birth Record of Lopez*, 5th Dist. Tuscarawas No. 2004-AP-06 0046, 2004-Ohio-7305, ¶ 29, citing *In re Hall*, 135 Ohio App.3d 1, 732 N.E.2d 1004 (4th Dist.). However, Adelaide challenges the probate court's refusal to grant her relief on the grounds that it lacked authority to act based on the language of the statute. This challenge presents a question of law that we review de novo. *State v. Jeffries*, 160 Ohio St. 3d 300, 2020-Ohio-1539, 156 N.E.3d 859, ¶ 15.

### IV. Probate Court

{¶ 11} "It is a well-settled principle of law that probate courts are courts of limited jurisdiction and are permitted to exercise only the authority granted to them by statute and by the Ohio Constitution." *In re Guardianship of Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, 872 N.E.2d 1214, ¶ 11, citing *Corron v. Corron*, 40 Ohio St.3d 75, 77, 531 N.E.2d 708 (1988). R.C. 2101.24(A)(1) identifies which subject matter areas are within the exclusive jurisdiction of the probate court. R.C. 2101.24(A)(2) provides that, in addition to the specific areas enumerated under the exclusive jurisdiction of the probate court, the probate court shall also have exclusive jurisdiction over a particular subject matter if both the following apply:

(a) Another section of the Revised Code expressly confers jurisdiction over

   that subject matter upon the probate court.

(b) No section of the Revised Code expressly confers jurisdiction over that

   subject matter upon any other court or agency.

{¶ 12} R.C. 3705.15 expressly confers jurisdiction on the probate court to correct birth records. The procedure for correcting birth records is controlled by R.C. 3705.15(A), which reads, in pertinent part, as follows:

Whoever claims to have been born in this state, and whose registration of birth is not recorded, or has been lost or destroyed, or has not been properly and accurately recorded, may file an application for registration of birth or correction of the birth record in the probate court of the county of the person's birth or residence[.] * * *

(A) An application to correct a birth record shall set forth all of the available facts required on a birth record and the reasons for making the application, and shall be verified by the applicant. * * * The application shall be supported by the affidavit of the physician or certified nurse-midwife in attendance. If an affidavit is not available, the application shall be supported by the affidavits of at least two persons having knowledge of the facts stated in the application, by documentary evidence, or by other evidence the court deems sufficient.

The probate judge, if satisfied that the facts are as stated, shall make an order correcting the birth record[.]

## V. Analysis

{¶ 13} The question before this Court is whether the probate court had the authority under R.C. 3705.15(A) to change the sex marker on a birth certificate where an individual was identified as one sex at birth but later identifies as the other. Adelaide contends that the statute should be interpreted broadly to allow individuals to change their birth marker when it is discovered later in life that their gender identity does not match the sex listed on their birth certificate. The probate court found that it did not have the authority under R.C. 3705.15(A) to grant the relief Adelaide requested as the plain language of the statute only permits corrections to information on the birth certificate that was recorded in error at the time of registration.

{¶ 14} The inquiry in this case centers on the statutory language "has not been properly and accurately recorded." We must first determine if this language is

ambiguous. If the language is ambiguous, then we must interpret the statute to determine the General Assembly's intent in enacting it. If it is not ambiguous, then we need not interpret it; we must simply apply it. *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 524, 634 N.E.2d 611 (1994). "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *State v. Hudson*, Ohio Slip Opinion No. 2022-Ohio-1435,__ N.E.3d __, ¶ 21, citing *Jones v. Action Coupling & Equip., Inc.,* 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12. "We 'do not have the authority' to dig deeper than the plain meaning of an unambiguous statute 'under the guise of either statutory interpretation or liberal construction.' " *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8, quoting *Morgan v. Adult Parole Auth.*, 68 Ohio St.3d 344, 347, 626 N.E.2d 939 (1994). " 'Our role is to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative.' " *State v. Bryant*, 160 Ohio St.3d 113, 2020-Ohio-1041, 154 N.E.3d 31, ¶ 17, quoting *State ex. rel. Natl. Lime & Stone Co., v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, ¶ 14.

{¶ 15} The registration and issuance of birth certificates in Ohio is governed by R.C. Chapter 3705, which establishes a statewide system of vital statistics maintained by the Office of Vital Statistics, which is part of the Ohio Department of Health ("ODH"). R.C. 3705.02. "A birth certificate for each live birth in this state shall be filed in the registration district in which it occurs within ten calendar days after such birth and shall be registered

if it has been completed and filed in accordance with this section." R.C. 3705.09(A). "When a birth occurs in or en route to an institution, the person in charge of the institution or a designated representative shall obtain the personal data, prepare the certificate, and complete and certify the facts of birth on the certificate within ten calendar days. The physician or certified nurse-midwife in attendance shall be listed on the birth record." R.C. 3705.09(B). The personal data included for a registration of birth includes information such as the name of the child, place of birth, date of birth, name and birthplace of mother, and name and birthplace of father. Ohio Adm.Code 3701-5-02, Appendix N. This also includes checking a box of either "male" or "female." *Id.* A person's biological sex is determined at birth by an objective anatomical examination by a birth attendant. This results in a declaration on the birth certificate of either "male" or "female" for the child's sex marker. *In re Ladrach*, 32 Ohio Misc.2d 6, 10, 513 N.E.2d 828 (C.P. 1987). According to the form, "[a]ll facts must be given as of time of birth." Ohio Adm.Code 3701-5-02, Appendix N.

{¶ 16} Based on the plain language of the statute, we do not find that this language "has not been properly and accurately recorded" is ambiguous. Adelaide contends that the phrase "has not been" is in the present perfect tense such that the statute permits any changes that occur in the time period before and up to the present moment. We do not agree that the use of this tense means what she contends. Rather, the language emphasizes the fact that an individual, at any time after the error is discovered, may file to correct the error because it has not yet been corrected. It does not mean that because something has changed after the original determination occurred that it then makes the

original determination incorrect. Further, the immediate following language is "accurately or properly recorded." Birth records are recorded at the time of birth, or shortly thereafter, and are then filed with the office of vital statistics. R.C. 3705.01; R.C. 3705.09. The language regarding the accurate and proper recordation of the information relates back to the original filing of the birth record and whether it was properly and accurately recorded at that time.

{¶ 17} R.C. 3705.15 is a "correction" statute, which permits the probate court, when presented with appropriate documentation, to correct errors made at the time of recordation. *In re Ladrach*, 32 Ohio Misc.2d at 8, 513 N.E.2d 828 (applying former R.C. 3705.20 amended and renumbered as R.C. 3705.15); *In re J.A.M.V.,* 7th Dist. Harrison No. 12 HA 3, 2013-Ohio-2502 (noting that R.C. 3705.15 is only permitted to correct spelling or clerical errors on the birth certificate, not to unilaterally change the spelling of the child's name later). The statute, by its express terms, permits making corrections, not amendments. Adelaide's application essentially asked the probate court to amend her birth certificate, not to correct it. But the probate court had no authority under R.C. 3705.15 to make that amendment and could not grant Adelaide's request. *In re Easterling*, 135 N.E.3d 496, 2019-Ohio-1516, ¶ 11 (1st Dist.) (probate court lacked authority to amend rather than correct the applicant's birth certificate under R.C. 3705.15); *In re Maxey*, 8th Dist. Cuyahoga No. 34558, 1976 WL 190807, *1 (Feb. 5, 1976) (applying former R.C. 3705.20 amended and renumbered as R.C. 3705.15; "there is no statutory enactment vesting the Probate Court with authority to order a change to the gender indicated on properly and accurately recorded birth records.").

{¶ 18} Whereas other statutes specifically allow amendments to the birth certificate, R.C. 3705.15 only allows corrections.   For example, R.C. 2717.02 allows an individual desiring to change their name to file an application in the probate court of the county of residence.   R.C. 3705.13 then allows the individual the ability to change the original birth record and have a new birth certificate provided to reflect the name change.   R.C. 3705.12 also allows the amendment of a birth record when an adoption has occurred allowing the child's adopted name and the information concerning the adoptive parents to be issued in the new birth record.   While the legislature has expressly provided in other statutes for a name to be changed or parent's names to be changed to reflect facts as they presently exist, the legislature has not provided for changing the sex marker or any other required fact on a birth certificate, in R.C. 3705.15.   One would not file an application under R.C. 3705.15 to "correct" their name because they decided to amend or change their name years after birth.   Rather, one would have to use the appropriate statute created by the legislature in order to amend their name on their birth certificate. This reasoning similarly applies to amendments to the sex marker on a birth certificate.

{¶ 19} The fact that other statutes specifically allow the probate court to grant amendments to a birth certificate does not mean that R.C. 3705.15 also allows it.   If we were to construe R.C. 3705.15 as permitting the probate court to change, not just correct, any of the required facts in the birth certificate, then there would be no need for the other statutes that allow modifications.   *E.g.* R.C. 3705.12; R.C. 3705.13.   We decline to find an ambiguity in the plain language of R.C. 3705.15 where none exists, especially where doing so would make other statutes obsolete.   Absent the express authority from the

legislature to modify the birth certificate to correlate with a later-in-life change, not just make corrections, the probate court lacked the authority to do so under R.C. 3705.15.

{¶ 20} Adelaide relies heavily on *Ray v. McCloud*, 507 F.Supp.3d 925, for the proposition that there is nothing in R.C. 3705.15 that prohibits modifying a birth record to change the sex marker of an individual. She further contends that the probate court gave no persuasive weight to the rulings in *Ray* and that *Ray* should have controlled here. We disagree.

{¶ 21} In *Ray*, four transgender individuals born in Ohio were denied the ability to change the sex marker on their birth certificates to reflect their gender identities as a result of the ODH's blanket policy refusing to issue such birth certificates, regardless of the manner in which the request was made. *Ray* at 929. The parties filed cross-motions for summary judgment. *Id.* at 930. After analyzing the constitutionality of ODH's policy, the Court found that "a blanket prohibition against transgender people changing their sex marker is unconstitutional" and permanently enjoined ODH from enforcing the policy. *Id.* at 939-940.

{¶ 22} Adelaide acknowledges that *Ray* is not binding on either the probate court or this Court but argues it should be accorded persuasive weight. We agree that *Ray* is not binding on either the probate court or this Court. *State v. Burnett*, 93 Ohio St.3d 419, 424, 755 N.E.2d 857 (2001) (state courts "are not bound by rulings on federal statutory or constitutional law made by a federal court other than the United States Supreme Court"). While a federal district court decision may be accorded some persuasive weight, even if the federal court were to find a statute unconstitutional, it would not end

our inquiry. *Id.* But contrary to Adelaide's contentions, we do not find that *Ray* expressly found R.C. 3705.15 unconstitutional or that the outcome in *Ray* requires us to ignore the plain language of the statute. *Ray* relied on established constitutional law principles in reaching its decision, but it did not analyze the jurisdiction and authority of Ohio probate courts or the constitutionality of R.C. 3705.15, but rather the blanket policy enacted by ODH. As the federal court stated, "[a]ll this Court is finding is that a blanket prohibition against transgender people changing their sex marker is unconstitutional." *Ray* at 939-940.

{¶ 23} To the extent Adelaide wants this Court to conduct a constitutional analysis of R.C. 3705.15 based on the same arguments raised in *Ray*, we decline to do so. Adelaide did not raise the constitutionality of R.C. 3705.15 in the probate court but rather argued the plain language of the statute was ambiguous and should be read broadly. She likewise argues on appeal that the probate court's interpretation of the statutory language was erroneous because it was too restrictive. The issue in this case is of statutory interpretation, not constitutionality. Furthermore, "Ohio law abounds with precedent to the effect that constitutional issues should not be decided unless absolutely necessary." *Hall China Co. v. Pub. Util. Comm.*, 50 Ohio St.2d 206, 210, 364 N.E.2d 852 (1977). We do not believe it is necessary to decide whether R.C. 3705.15(A) is unconstitutional at this juncture.

{¶ 24} The "[p]robate court's jurisdiction [under R.C. 3705.15] pertaining to birth certificates is limited to ordering the registration of an unrecorded birth and the correction of a birth record." *Zimmerman v. Montgomery Co. Pub. Health Dept.*, 2d Dist.

Montgomery No. 26816, 2016-Ohio-1423, ¶ 14, citing *Nemcek v. Paskey*, 137 Ohio Misc.2d 1, 2006-Ohio-2059, 849 N.E.2d 108, ¶ 14. (C.P.) R.C. 3705.15 expressly confers jurisdiction on the probate court to correct birth records. The significance in the statute is not that R.C. 3705.15 does not explicitly prohibit correcting the sex marker for an individual, it is that the statute does not explicitly allow the probate court to *modify* or *amend* any required fact reflected on the birth certificate. Rather, the probate court is only permitted to make corrections under R.C. 3705.15 if the sex marker, or any other required fact, "has not been properly and accurately recorded[.]"

{¶ 25} Although a copy of Adelaide's birth certificate was not submitted in this case, all evidence suggests that Adelaide was born in a hospital wherein the information for her birth certificate was prepared, completed, certified, and filed according to the applicable statutes. There is no allegation that the above-described process was done in error. Likewise, though Adelaide's gender identity is now female, she testified that she was born with male genitalia, further demonstrating that the identification made at the time of her birth was correctly recorded based on the standard determinations used at that time, and which continue to be used today. Adelaide is seeking an amendment of her birth records, not a correction, because the birth certificate was properly and accurately recorded at the time it was completed and filed. The probate court properly found that R.C. 3705.15 did not provide the authority to grant Adelaide the relief she sought, and we do not find that *Ray* requires us to hold otherwise.

{¶ 26} R.C. 3705.15 is not the proper avenue to seek a modification of a birth certificate for any required fact, including the sex marker. While there may be alternative

avenues available to Adelaide to accomplish the change that she is seeking, those alternatives are not before us. In Adelaide's post-hearing trial court brief, she acknowledged that *Ray* did not mandate that ODH adopt any particular policy or process to change the sex marker on a birth certificate, but it was suggested that ODH could utilize a process pursuant to R.C. 3705.22 that does not require a court order. She also noted in her appellate brief and conceded at oral argument that R.C. 3705.22 allows amendments to birth certificates. She requested that if we found that R.C. 3705.15 was not the proper forum for the relief she sought, she be granted leave to file a conforming application under R.C. 3705.22. Although we find that R.C. 3705.15 cannot grant Adelaide the relief she seeks, we cannot grant her leave to file a conforming application under R.C. 3705.22 with the probate court. R.C. 3705.22 contemplates that a request for an amendment to the birth record be filed with ODH as an administrative remedy, not with the probate court.

{¶ 27} Having found that the probate court lacked the authority to amend Adelaide's birth certificate to reflect an amendment to the sex marker, we overrule both of Adelaide's assignments of error and affirm the decision of the probate court.

## VI. Conclusion

{¶ 28} The decision of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Maya Simek
Chad M. Eggspuehler
Danielle M. Easton
Hon. Richard P. Carey